**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02664-REB-KLM

JEFF DIEM

Plaintiff,

v.

TRAVELERS PERSONAL INSURANCE COMPANY

Defendant.

---

# TRAVELERS PERSONAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Defendant, Travelers Personal Insurance Company ("Defendant" or "Travelers"), by and through the undersigned counsel of record, hereby submits its Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

This matter arises from a claim involving a minor crack in a galvanized drain waste vent drainage pipe ("DWV pipe") at a dilapidated seventy-year old duplex home located at 4565 Elm Court, Denver, Colorado 80211 (the "Property"). At issue is a difficult claimant's attempt to use the claim to perform unjustified electrical and plumbing code upgrades, repairs to effectuate the upgrades, and to obtain lost rental income entirely unrelated to the cracked DWV pipe. On July 6, 2020, the DWV pipe cracked due to wear-and-tear, which caused some water/sewage to damage the lower unit of Jeffrey Diem's ("Plaintiff") Property. Thereafter, Plaintiff submitted a claim to Travelers for the damage, which included the drywall that enclosed the pipe, floor damage, and some mold damage. Travelers paid to mitigate and repair the damage, for four months of lost rental

income for the Property's lower unit, and partially denied the claim due to wear-and-tear to the DWV pipe, faulty workmanship, mechanical breakdown, as well as rot to a structural wall. Travelers also denied coverage for Plaintiff's claim for lost rent for the upper unit because it was not unfit to live in due to the claim. Plaintiff alleges significant electrical and plumbing upgrades are required due to code, however, Plaintiff ignores that the systems were not damaged by the cracked DWV pipe and failed to provide anything demonstrating that the upgrades were required by a code enforcement action, as required by the policy's Ordinance and Law coverage.[1]

As such, Plaintiff attempts to use this lawsuit to upgrade numerous pre-existing electrical and plumbing code violations that are unrelated to the cracked DWV pipe, and obtain unjustified lost rental income. Contrary to Plaintiff's contentions, the evidence demonstrates that Travelers properly investigated and adjusted Plaintiff's claim and timely and properly communicated with Plaintiff regarding its' coverage positions. Travelers now moves for partial summary judgment on Plaintiff's claim for breach of contract. The evidence here, even when viewed in a light most favorable to Plaintiff, fails to demonstrate that Travelers breached the contract with Plaintiff. For these reasons, as more fully explained below, the Court should grant Travelers' Motion for Partial Summary Judgment and dismiss Plaintiff's breach of contract claim.

## JURISDICTIONAL STATEMENT

The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and there is diversity of citizenship between the Parties as Mr. Diem is a resident of Colorado and Travelers is domiciled in Connecticut. [Dkt. No. 3, ¶¶ 1-3].

## STATEMENT OF FACTS

[1] The Ordinance and Law provision is detailed in Travelers' Statement of Facts ("SOF"), at ¶6.

1. Travelers insured the Property under a Landlord Dwelling Policy, Policy No. 602864992 653 1 from July 29, 2019 through July 29, 2020, which provided insurance coverage against direct physical loss or damage caused by or resulting from a Peril Insured Against, subject to the Policy's terms, conditions, limitations, and exclusions. *See* Travelers Policy (the "Policy"), attached hereto as **Exhibit A**, pp. 5, 7, 20.

2. The Policy has a $197,000 limit of liability for Coverage A – Dwelling, a $19,7000 limit of liability for Coverage D – Loss of Use, and Ordinance or Law additional coverage in the amount of 10% of Coverage A – Dwelling, which is a $19,700 limit. **Exhibit A**, pp. 15-16.

3. The Policy's Property – Perils Insured Against section contains the following exception regarding the Accidental Discharge or Overflow or Water or Steam:

> We insure for direct physical loss to the property described in Property Coverages A, B and C caused by any of the following perils, unless the loss is excluded in Property – Exclusions.
>
> 11. **Accidental Discharge or Overflow of Water or Steam**
>
> b. This peril does not include loss:
> (1) To the system or appliance from which the water or steam escaped.
>
> **Exhibit A**, p. 21.

4. The Policy contains the following Special Coverage endorsement which replaces Property – Perils Insured against with the following relevant provisions:

> **Property – Perils Insured Against**
>
> The following replaces Property – Perils Insured Against:
> ...
> **Property Coverage A – Dwelling** (in Form **HQ-P56)**
>
> 1. We insure against direct physical loss to property described in Coverages A and B (if applicable).
> 2. We do not insure for loss:
> a. Excluded Under Property – Exclusions;
>
> …

c. Caused by:
(6) Any of the following:
(a) Wear and tear, marring, scratching or deterioration;
(b) Mechanical breakdown, latent defect, inherent vice or any quality in property causes it to damage or destroy itself;
(c) Smog, rot, rust or other corrosion;
….

**Exhibit A**, pp. 31-32.

5. The Special Coverage endorsement also includes the following exclusions:

**Property – Exclusions**
The following are added under Property – Exclusions:
We do not insure for loss to property described in Property Coverages A and B (if applicable) caused by any of the following. However, any ensuing loss to property described in Property Coverages A and B (if applicable) not excluded by any other provision in this policy is covered.
…
3. Faulty, inadequate or defective:
b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;
c. Materials used in repair, construction, renovation or remodeling; or
d. Maintenance;
of part or all of any property whether on or off the "residence premises".

**Exhibit A**, pp. 33-34.

6. The Policy's **PROPERTY – ADDITIONAL COVERAGES** section contains the following provision regarding additional Ordinance or Law coverage:

9. Ordinance or Law
a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:
(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;
…
(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**Exhibit A**, p. 24.

7. The Policy's Special Provisions – Colorado endorsement contains the following relevant Property Coverage D – Loss of Use provision:

> **PROPERTY COVERAGE D – LOSS OF USE**
> When the dwelling on the "residence premises" shown in the Declarations is a one-family, owner occupied dwelling used as a primary residence and this Special Provisions – Colorado is used with form HQ-P02 or HQ-P03, the introductory paragraph and paragraphs 1. Additional Living Expense and 2. Fair Rental Value under PROPERTY COVERAGE D – LOSS OF USE are replaced by the following:
> 2. Fair Rental Value. If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.
> Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held for rental or rented to others for a term of 6 consecutive months or more by the same roomer, boarder, tenant or other occupant who provides compensation to an "insured".
> Payment will be for the shortest time required to repair or replace such premises, but for no more than the time period shown in the Declarations as the Limit under Coverage D – Loss of Use.

**Exhibit A**, pp. 41-42.

8. On July 29, 2011, an inspection report was prepared which noted numerous deficiencies with the Property's electrical and plumbing systems. Inspection Report dated July 29, 2011, attached hereto as **Exhibit B**, pp. 1, 24-29.

9. On or about July 6, 2020, a portion of a vertically running DWV pipe cracked in the lower unit of Plaintiff's Property causing damage to the drywall and floor. Dkt. No. 3, ¶ 9; Travelers' Claim Notes, attached hereto as **Exhibit C**, at pp. 1-2.

10. Plaintiff provided notice of the claim on July 6, 2020, which Travelers designated as Claim No. IHN8570 and promptly assigned to adjuster Brian Head. **Exhibit C**, pp. 1-2.

11. On July 13, 2020, Mr. Head conducted a virtual inspection, and on July 14, 2020, issued an estimate and payment in the amount of $7,031.13, after application of the Policy's $1,000 deductible, for mitigation of the bathroom and mechanical room. **Exhibit C**, pp. 3-4.

12. On July 20, 2020, Metropolitan Drain Cleaning, LLC, prepared an estimate in the amount of $14,100.00 for plumbing code upgrades, noting that almost all of the pipes were out of code and/or undersized. Estimate dated July 20, 2020, attached hereto as **Exhibit D.**

13. On July 29, 2020, Travelers performed a supplemental inspection and issued an updated estimate and payment of $1,976.74 to remove and replace damage to the bathroom ceiling. **Exhibit C**, pp. 5-8.

14. On August 7, 2020, Travelers paid Plaintiff's lost monthly rental income for the lower unit for the month of July 2020 in the prorated amount of $796.90. **Exhibit C**, pp. 8-10.

15. Plaintiff prepared an estimate dated August 13, 2020 with a total replacement cost value ("RCV") of $40,156.79, which includes plumbing and electrical code bids for $16,920.00 and $5,370.00. Plaintiff's estimate, attached hereto as **Exhibit E,** pp. 2, 8.

16. On August 18, 2020, Mr. Diem advised Justin Sicheri, a new adjuster handling the claim, that code upgrades were required for plumbing, electrical, water heaters and furnaces, and on August 24, 2020, Travelers performed an inspection with Mr. Diem and his plumber, John Napolitan, and advised that Travelers required the City's report as to the electrical and plumbing code upgrades, and that the structural wall was not covered due to rot. **Exhibit C**, pp. 14-15.

17. On August 28, 2020, Plaintiff requested a loss of rent payment for August 2020 in the amount of $950.00, which Travelers paid and again advised that the electrical and plumbing code items were pending documentation and inspection by the City. **Exhibit C**, p. 15.

18. By emails dated September 2, 2020, Travelers again advised Plaintiff and his plumber that the City needed to provide documentation of the code being enforced for coverage to be approved. Travelers' emails dated September 2, 2020, attached hereto as **Exhibit F**, pp. 1-4.

19. That same day, Plaintiff's agent, Brian Richardson, advised Plaintiff that the upgrades need to be specifically required by the City for coverage to apply. **Exhibit F,** pp. 5-6.

20. On September 9, 2020, Travelers issued a partial denial letter advising that its inspection determined that the DWV pipe cracked due to wear and tear, faulty workmanship or mechanical breakdown which caused rot to a structural wall, and that since wear and tear, rot, mechanical breakdown, the plumbing system in which water escaped and faulty workmanship are not covered, the Policy did not cover the plumbing and code items associated with the plumbing and electrical systems. **Exhibit C**, p. 16; Travelers' partial denial letter dated September 9, 2020, attached hereto as **Exhibit G**, at pp. 1-2.

21. On September 9, 2020, Travelers reiterated its request for documents demonstrating that the upgrades were required by the City to Plaintiff's agent, and on September 11, 2020, Travelers advised Plaintiff the electrical estimate was not covered because it was not directly damaged by the water loss. **Exhibit C**, pp. 17-19; Email dated September 11, 2020, attached hereto as **Exhibit H**, pp. 1-2.

22. On September 21**,** 2020, Plaintiff submitted a supplemental estimate to Travelers, advised that the upstairs tenant vacated the Property on September 20, 2020, requested loss of rental income in the amount of $1,895.00, and advised he was not proceeding with repairs. **Exhibit C**, pp. 18-19. Emails from Plaintiff to Travelers, attached hereto as **Exhibit I**, at pp. 3-4.

23. By email and letter dated September 22, 2020, Travelers advised Plaintiff that an additional estimate and payment were issued, coverage for lost rental income for the lower unit was limited to four months, there was no lost rental income coverage for the upper unit because the lease did not end due to the loss, and that the electrical, plumbing and framework were

previously addressed. **Exhibit C**, pp. 18-20; **Exhibit I**, pp 1-3; Travelers' letter dated September 22, 2020, attached hereto as **Exhibit J**.

24. On September 25, 2020, Travelers issued an updated estimate increasing the RCV amount of the claim to $24,595.65 and a supplemental payment in the amount of $2,496.88. **Exhibit C**, p. 21; Travelers' estimate dated September 25, 2020, attached hereto as **Exhibit K**.

25. On October 2, 2020, Plaintiff requested payment of lost rent for the lower unit for September 2020, and which Travelers paid the same day. **Exhibit C**, pp. 22-23.

26. On October 20, 2020, Mr. Diem advised his public adjuster, Bellator Claims Resolution, LLC ("Bellator"), that the electric would require a 100% gut of the upstairs and downstairs to access the wiring, and that there are insufficient outlets, wrong placement, incorrect wiring, incorrect panels. Plaintiff's October 20, 2020 email, attached hereto as **Exhibit L**.

27. On October 22, 2020, Mr. Sicheri emailed the PA the applicable coverage section regarding the plumbing and electrical code upgrades. **Exhibit C**, pp. 23-24; Travelers' email dated October 26, 2020 attached hereto as **Exhibit M**.

28. On November 16, 2020, Plaintiff requested the final lost rental income payment for the month of October 2020, which Travelers issued payment for that day. **Exhibit C**, p. 24.

29. On December 4, 2020, Plaintiff's electrician prepared an estimate for electrical code upgrades in the amount of $23,000.00, which notes that the work included a complete rewire of the house. Plaintiff's electrical estimate, attached hereto as **Exhibit N,** pp. 1-6.

30. On December 8, 2020, Plaintiff prepared an updated estimate in the amount of $132,300.03, which included plumbing and electrical line items totaling $44,891.00 with overhead and profit. Plaintiff's estimate dated December 8, 2020, attached hereto as **Exhibit O,** pp. 2, 32

31. On January 15, 2021, Bellator submitted a demand and supplemental estimate in the amount of $163,624.88, which included electrical and plumbing code upgrades totaling $49,064.75. The letter advised the walls, ceilings, floors and cabinets would be affected to provide access to the plumbing and electrical systems. Plaintiff's January 15, 2021 letter with enclosures attached hereto as **Exhibit P**, at pp. 2, 9, 40, 65-71.

32. On February 23, 2021, Bellator submitted a final demand in the amount of $163,624.88, which cited electrical and plumbing code upgrades purportedly required and which Mr. Diem advised Bellator he believed applied. **Exhibit C**, p. 26; Bellator's Final demand, attached hereto as **Exhibit Q**, at pp. 3-4, 5-6, 44; Plaintiff's email to Bellator, attached hereto as **Exhibit R**.

33. In response, Travelers advised that it did not agree with the demand or estimate and requested that Bellator provide documentation from the building department to support the code upgrades. **Exhibit C**, p. 26. Travelers' response email, attached hereto as **Exhibit S**.

34. Plaintiff acknowledges that the electrical and plumbing code upgrades were not related to the loss, that the Property had electrical and plumbing code issues that existed prior to the date of loss and the upper unit tenant moved out for reasons unrelated to the Property's condition. Diem Deposition Transcript, **Exhibit T**, p. 49, ln. 4 to 22; p. 141, ln. 5 to p. 142, ln 19; p. 209, ln 10 to 13; 212, ln. 20 to p. 215, ln. 1; p. 243, ln. 16 to p. 244, ln 5; p. 263, ln. 12 to p. 264, ln. 3; p. 268, ln. 4 to p. 272, ln 7.

35. Plaintiff admits that (i) no city or county building officials have issued or provided any documents stating the Property requires code upgrades; (ii) no code enforcement actions have been initiated against Plaintiff with respect to the Property by any city or county building officials as a result of the cracked DWV pipe; and (iii) he has not provided any documents demonstrating that the Property was subject to a code-enforcement related action. Plaintiff's Responses to

Defendant's Second Set of Written Discovery Requests, attached hereto as **Exhibit U**, pp. 5-6; **Exhibit T** at p. 139, ln. 4 to p. 140, ln. 8; p. 154, ln. 7 to ln. 13; p. 155, ln. 11 to p. 156, ln. 17; p. 263, ln. 1 to ln. 11; p. 265, ln. 8 to ln. 15.

36. Plaintiff's plumber acknowledges that the plumbing upgrades required by code had nothing to do with the cracked DWV pipe and that he was unaware of any documents being issued by any City or County building officials demonstrating that the Property was subject to any code enforcement actions or that the plumbing upgrades claimed by Plaintiff were required by code. Deposition of John Napolitan, attached hereto as **Exhibit V**, p. 97, ln. 25 to p. 100, ln 2; p. 102, ln. 15 to p. 103, ln 9; p. 103, ln 24 to p. 104, ln 6; p. 105, ln. 9 to p. 105, ln 21; p. 112, ln. 2 to ln. 15; p. 113, ln. 1 to ln. 4; p. 115, ln. 9 to ln. 14; p. 124, ln. 11 to p. 125, ln. 14; p. 126, ln. 2 to p. 127, ln. 4; p. 128, ln. 10 to p. 129, ln. 21.

37. Plaintiff's electrician, Marcus Guerra, acknowledges that the electrical code upgrades had nothing to do with the cracked DWV pipe and that he was unaware of any documents being issued by any City or County building officials demonstrating that the Property was subject to any code enforcement actions or that the electrical upgrades claimed were required by code. Deposition of Marcus Guerra, attached hereto as **Exhibit W**, p. 49, ln. 2 to ln. 11; p. 52, ln. 23 to p. 54, ln 21; p. 57, ln. 3 to ln. 15; p. 59, ln. 2 to ln. 19; p. 61, ln. 11 to p. 62, ln 6; p. 64, ln. 7 to ln. 21; p. 69, ln. 4 to p. 70, ln 1; p. 71, ln 22 to p. 73, ln. 22; p. 80, ln. 1 to p. 81, ln. 17; p. 86, ln. 24 to p. 87, ln. 6; p. 92, ln. 2 to p. 93, ln. 5; p. 102, ln. 20 to p. 103, ln. 16; p. 104, ln. 3 to p. 105, ln 25; p. 113, ln. 12 to ln. 19.

38. Travelers' retained expert, Paul Vaulman, P.E. opines that: (i) that the DWV pipe and associated water damage could be repaired without any of the electrical and plumbing system code upgrades claimed; (ii) Plaintiff did not provide any documents from code officials stating that

plumbing and electrical system upgrades were required and as such, the code upgrades claimed were unsubstantiated; (iii) the loss did not affect the main (ground floor or "upper") level or exterior of the home and the plumbing code does not require any of the upsizing or repairs to other areas of the plumbing system detailed in Plaintiff's correspondence to the PA to repair the DWV pipe; (iv) there was no damage to the electrical and plumbing systems caused by the cracked DWV pipe to support the code upgrades claimed by Plaintiff; and (v) Travelers' repair scope in the amount of $24,594.95 was reasonable to return the Property to pre-loss conditions. Report of Paul Vaulman with exhibit, attached hereto as **Exhibit X**, pp. 1, 3-5.

39. Travelers' claim handling expert, Paul Hamilton, determined that Travelers properly did not pay for the code upgrades because (i) there is no indication Plaintiff incurred any costs in connection with the code upgrades or obtained any documents establishing that there was a code enforcement action with respect to the Property; (ii) even if there were a code enforcement action, the DWV pipe was not damaged by a covered peril, and would not be covered; (iii) there was no coverage to bring the electrical up to code because it was not damaged by a covered peril; (iv) the alleged code upgrades claimed exceed the Policy's Ordinance and Law coverage limit of $19,700.00; and (v) Travelers agreement to pay Mr. Diem four months of loss of rent for the lower unit was reasonable and since Mr. Diem's upstairs tenant did not move out until September 20, 2020, Travelers reasonably concluded the upper unit was not rendered uninhabitable by the loss. Report of Paul Hamilton, attached hereto as **Exhibit Y,** at pp. 4-9.

## PROCEDURAL HISTORY

1. Plaintiff filed this lawsuit in the District Court for Denver County on August 11, 2021, under case number 2021CV32520. He asserts claims for: (i) breach of contract; (ii) Violation of C.R.S. §§ 10-3-1115 and 10-3-1116; and (iii) common law insurance bad faith. [Dkt No. 1-3].

2. On September 30, 2021, Defendant removed this action to this Court. [Dkt. No. 1].

3. On October 1, 2021, Defendant filed its Answer and Jury Demand. [Dkt. No. 10].

4. On November 30, 2021, the Court entered the Scheduling Order. [Dkt. No. 24].

5. On December 2, 2021, the Court entered the Trial Preparation Conference Order. [Dkt. No. 25].

6. On December 14, 2021, Plaintiff filed his Supplemental Damages Disclosure and supporting estimate. [Dkt. Nos. 27 & 27-1].

7. On June 1, 2022, the Parties filed their First Joint Motion for Extension of Deadlines [Dkt. No. 33], which the Court granted. [Dkt. No. 38].

8. On June 29, 2022, the Parties filed their Second Joint Motion for Extension of Deadlines [Dkt. No. 39], which the Court granted in part. [Dkt. No. 41].

9. On September 12, 2022, the Parties filed their Third Joint Motion for Extension of Deadlines [Dkt. No. 42], which the Court granted. [Dkt. No. 44].

10. On September 29, 2022, the Parties filed their Fourth Joint Motion for Extension of Deadlines [Dkt. No. 45], which the Court granted in part. [Dkt. No. 48].

11. On October 18, 2022, a Joint Settlement Status Report was filed. [Dkt. No. 18].

12. On November 2, 2022, Defendant requested a discovery dispute hearing over two depositions Plaintiff noticed on November 1, 2022 for November 3, 2022, and the Court issued a Minute Order scheduling a discovery hearing for November 21, 2022. [Dkt. No. 49].

13. On November 7, 2022, the Parties filed a Fifth Joint Motion for Extension of Deadlines, Request for Continuances and Status Conference [Dkt. No. 50], which is pending.

14. On November 9, 2022, the Parties filed a Sixth Joint Motion for Extension of Deadlines [Dkt. No. 51], which the Court granted [Dkt. No. 52].

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *See Celotex v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is appropriate where there is no "genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to designate evidence which demonstrates the existence of a genuine dispute of material fact. *See 1-800- Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013). If the respondent fails to produce sufficient evidence to establish its claim or defense, then the movant is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 322-23.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (brackets and quotation omitted). A factual dispute is 'genuine' and summary judgment is precluded if the evidence presented in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations without any significant probative evidence tending to support the complaint are insufficient as are conclusory assertions that factual disputes exist." *Southway v. Cent. Bank of Nigeria,* 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001) aff'd, 328 F.3d 1267 (10th Cir. 2003)

### II. TRAVELERS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

The Court's jurisdiction in this matter is founded on diversity of citizenship. 28 U.S.C. § 1332(a). Accordingly, the Court shall apply the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F. 3d 894, 896 (10th Cir. 1995). "It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992). Plaintiff cannot establish the third and fourth elements, and therefore, his claim for breach of contract must be dismissed.

Here, the undisputed facts establish that Travelers paid all amounts due under the Policy to remediate and repair the damage caused by the cracked DWV pipe. Ordinance and Law coverage was not triggered for the electrical and plumbing code upgrades and related work because the upgrades were not caused by the DWV pipe, and in fact, existed prior to the loss. Further, even if code upgrades were required, Plaintiff has not provided any evidence demonstrating that there was a code enforcement action requiring the code upgrades, as required by the Policy. Moreover, Ordinance and Law coverage is explicitly limited to "costs you incur" and Plaintiff has not incurred any amounts to upgrade those systems due to a code enforcement action. SOF ¶¶ 6, 39.

Additionally, the evidence demonstrates that Travelers properly paid Plaintiff for four months of loss of rental income for the lower unit based upon the amount of time it should have taken to repair the damage caused by the cracked DWV pipe. Further, Travelers properly denied coverage for the loss of rental income related to the upper unit because the upper unit was not rendered unfit to live in due to the loss. Thus, since Mr. Diem cannot establish elements three and four of his breach of contract claim, his claim must fail as a matter of law.

**A. Travelers Did Not Breach The Policy Because It Paid Plaintiff All Covered Benefits Owed For Damage Caused By The Cracked DWV Pipe And Because There Was No Code Enforcement Action Mandating The Code Upgrades Purportedly Required At The Property**

Under Colorado law, courts interpreting an insurance policy must "enforce the plain language of the policy unless it is ambiguous. An insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). "When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract. *RK Mechanical, Inc. v. Travelers Prop. Cas. Co. of America*, 944 F.Supp.2d 1013, 1020 (D. Colo. 2011). "Colorado courts have approved clauses that exclude coverage for the costs of correcting defects." *Id.* "If the insurer shows the exclusion applies, the burden shifts back to the insured to prove the applicability of an exception to the exclusion." *Id.*

Here, Travelers properly paid Plaintiff to remediate and repair the damage caused by the cracked DWV pipe and properly partially denied coverage for the damage to the cracked pipe/plumbing system due to wear and tear, faulty workmanship, and mechanical breakdown, and also properly denied coverage for the structural wall due to rot. SOF ¶¶ 4-7, 11, 13, 20, 23-24, 36, 38-39; *See Monroe v. CSAA Gen. Ins. Co.*, 2019 WL 4104317 at *3 (D. Colo. Aug. 26, 2019) (the policy unambiguously excludes wear and tear); *Gallegos v. Safeco Ins. Co. of America*, 646 Fed. Appx. 689, 694 (10th Cir. 2016) *Kesling v. American Family Mut. Ins. Co.*, 861 F.Supp.2d 1274, 1282 (D. Colo. 2012) ("it is evident on the face of the damage claimed by the plaintiff … that the defective construction exclusion applies to all such damages."); *Lodge at Mountain Village Owner Ass'n, Inc. v. Eighteen Certain Underwriters*, 2022 WL 824425 at *5-6 (D. Colo. March 18, 2022).

Travelers' inspections determined that the damage to the DWV pipe and structural wall was due to wear and tear, faulty workmanship, mechanical breakdown and rot, and properly

partially denied coverage for that part of the claim. SOF ¶¶ 4-7, 11, 13, 16, 20, 23-24, 36, 38-39. Moreover, as noted by Mr. Vaulman, Travelers' final repair scope and building settlement of $24,594.55 was reasonable to return the Property to its pre-loss condition. SOF ¶ 38. Additionally, Bellator's letter dated January 15, 2021 clearly states that the supplemental estimate, which forms the basis of Plaintiff's Supplemental Damages Disclosure, is premised upon the electrical and plumbing code upgrades and associated work to complete those repairs. SOF ¶ 31; Dkt Nos. 27 & 27-1. Thus, this estimate is clearly for upgrades and work beyond the covered damage caused by the cracked DWV pipe. SOF ¶¶ 12, 15, 24, 26, 29, 30-32, 34-39. Thus, Travelers properly reimbursed Plaintiff for all covered damage directly caused by the cracked DWV pipe.

Moreover, Travelers did not breach the contract by not paying for any of the electrical and plumbing system upgrades purportedly required by code or the related work to perform the upgrades, because the electrical and plumbing upgrades are unrelated to the damage caused by the cracked DWV pipe and there is no evidence of a code enforcement action requiring the electrical and plumbing code upgrades (and associated repairs) due to a covered loss. SOF ¶¶ 12, 16, 18-21, 26, 29, 30-31, 33-39. Further, there is no coverage when the damage necessitating the electrical and plumbing code upgrades was pre-existing and not covered due to wear and tear and rot to the structural wall, instead of the enforcement of a building code, ordinance or law. SOF ¶¶ 3-6, 8, 12, 16, 20-21, 26, 35-39. Nor is there any evidence that the electrical and plumbing systems were damaged as a result of the cracked DWV pipe. SOF ¶¶ 12, 21, 26, 29, 32, 34, 36-39.

Although Plaintiff argues code requires the upgrades to the electrical and plumbing systems, and additional work must be undertaken to effectuate those upgrades, Plaintiff's argument incorrectly interprets the Ordinance and Law coverage to apply anytime there is a potentially applicable code provision that may apply to a repair. SOF ¶ 6, 20-21, 23. Moreover, it is not enough

that there is a potentially applicable code provision – the code must also be enforced. SOF ¶¶ 6, 19, 23, 38-39. Thus, an insurer is only responsible for the cost of complying with building code upgrades required and enforced by building officials. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190-1191 (10th Cir. 2009)("'[b]y the contract's plain terms … only laws or ordinances regulating "property" or "facilities" that have been damaged by an insured peril are covered."); *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1033 (Colo. Ct. App. 2002); *Mesaba Holdings, Inc. v. Federal Ins. Co.* No. Civ. 02-660RHKJGL, 2002 WL 31856384 (D. Minn. Dec. 19, 2002); *Commonwealth Ins. Co. v. Grays Harbor County*, 84 P.3d 304 (Wash. Ct. App. 2004).

Most significantly, the evidence and Plaintiff's admissions clearly demonstrate that there was no code enforcement action requiring the upgrades to electrical and plumbing systems, as required by the Policy. SOF ¶¶ 6, 35-39. Since the electrical and plumbing code upgrades, and related work to effectuate same were not the result of a code enforcement action, the Policy's Ordinance and Law coverage was not triggered. *Id.* As such, the Policy does not provide any coverage for the electrical and plumbing code upgrades claimed by Plaintiff or the associated repairs to effectuate those upgrades. Second, there is no evidence the electrical and plumbing systems were damaged as a result of the sewage/water that spilled from the cracked DWV pipe. SOF ¶¶ 12, 20-21, 29, 34, 36-39. Third, even if any code had been enforced, the Policy does not cover damage resulting from wear and tear, deterioration, or rot. SOF ¶¶ 4-5, 16, 20, 39. Thus, to the extent any electrical or plumbing systems ran through the structural wall, the wall was not covered because it was not damaged by rot. *See My Roofer, Inc. v. State Farm Fire & Cas. Co.*, Case No. 2016CA1478, ¶ 10 (Colo. App. Sept. 14, 2017) (unpublished) (attached as **Exhibit Z**).

Travelers properly denied coverage for the structural wall because it was damaged by rot, and any claimed upgrades to the electrical and plumbing systems purportedly required by code are

not related to a covered peril and therefore, also excluded. SOF ¶¶ 4-5, 16, 20, 38-39. Further, even if the structural wall was damaged, again, there is no evidence of a code enforcement action necessitating upgrades to the structural wall, the undamaged electrical and plumbing systems, or any additional work to effectuate those code upgrades. SOF ¶¶ 35-39. Moreover, there is also no evidence that Plaintiff actually incurred any additional costs due to a code enforcement action related to the electrical and plumbing system because of the loss. Finally, even if Ordinance and Law coverage was triggered, the policy limit is $19,700.00. SOF ¶ 2. Plaintiff's claim grossly exceeds that limit because the electrical and plumbing upgrades alone amount to $49,064.75 of the $163,624.88 in dwelling damages. Thus, if Ordinance and Law coverage applies (which it does not), the most Plaintiff can recover for the code upgrades and associated work is $19,700.00.

Therefore, since Bellator's estimate and letter explaining the basis for the estimate, and Mr. Vaulman's assessment of Travelers' repair scope and payments demonstrate that the electrical and plumbing code upgrades and associated work are the sole basis for Plaintiff's alleged damages to the dwelling, there is no coverage for any of the work claimed by Plaintiff. SOF ¶¶ 31, 38. As such, Travelers cannot be held liable for the outrageous costs of upgrading Plaintiff's Property to comply with code and this portion of Plaintiff's breach of contract claim must be dismissed.

**B. Travelers Properly Paid All Loss Of Rental Income For The Lower Unit And Properly Denied Coverage For Loss Of Rental Income For The Upper Unit**

Plaintiff's breach of contract claim with respect to his lost rental income must also be dismissed because Travelers appropriately paid Plaintiff loss rental income for four months, which was the period of time required to repair the damage to the lower unit caused by the cracked DWV pipe. Further, Travelers properly did not pay loss of rental income for the upper unit because it was not rendered unfit to live in by the cracked DWV pipe. As such, Plaintiff's breach of contract claim with respect to Property Coverage D – Loss of Use must be dismissed.

The undisputed evidence demonstrates that Travelers determined that four months was a reasonable time to repair the damage to the lower unit, communicated that and that Travelers was not responsible for lost rental income due to delays in repairing the Property attributable to Plaintiff, and that Plaintiff failed to make the appropriate repairs due to his dispute over the code items. SOF ¶¶ 7, 14, 17, 22-23, 25, 28, 39. Travelers paid Mr. Diem for the four months that the lower unit was uninhabitable and Mr. Diem's failure to make repairs cannot be attributed to Travelers. *Id*.; *See Bruce v. Pacific Specialty Ins. Co.*, 2016 WL 11693598 at *8 (D. Colo. Aug. 15, 2016) (Policy unambiguously did not provide coverage for rents lost after the rental units were habitable). Moreover, the upper unit was never rendered unfit to live in due to the cracked DWV pipe because, although the loss occurred on July 6, 2020, the tenant lived in the unit through September 2021, before voluntarily vacating for reasons unrelated to the cracked DWV pipe. SOF ¶¶ 22-23, 39; *See Bruce*, 2016 WL 11693598 at *8. As such, since the upper unit was never damaged or rendered unfit to live in due to the loss, the Policy does not provide coverage for lost rental income and Travelers properly denied Plaintiff's loss of rent claim for the upper unit. SOF ¶¶ 7, 22-23 39. Therefore, Plaintiff's breach of contract claim for thirteen months of lost rental income for the upper and lower units of the Property must be dismissed.

**C. Plaintiff Has Not Demonstrated Any Damages**

For the reasons detailed above, Plaintiff cannot demonstrate that he sustained any damages because Travelers paid for all covered damage caused by the cracked DWV pipe, and the electrical and plumbing code upgrades and associated repair work were not required by a code enforcement action. SOF ¶¶ 20, 24, 34-39. Further, Travelers paid lost rental income for the lower unit, and Plaintiff was not entitled to lost rental income for the upper unit because the unit was not rendered unfit to live in because of the claim. SOF ¶¶ 22-23, 39. *See, e.g., Pomeranz v. McDonald's Corp.*,

843 P.2d 1378, 1381 (Colo. 1993) ("… a plaintiff may recover the amount of damages that are required to place him in the same position he would have occupied had the breach not occurred."). As such, since Travelers paid all covered benefits owed, Plaintiff cannot demonstrate any damages and his contract claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Travelers respectfully requests that the Court enter an Order granting its Motion for Partial Summary Judgment and dismissing Plaintiff's breach of contract claim with prejudice.

WHEREFORE, Travelers Personal Insurance Company respectfully requests that the Court enter an Order partial granting summary judgment in its favor and against Plaintiff as to the claim for breach of contract as a matter of law, and that the Court grant any additional and further relief which the Court deems appropriate.

Respectfully submitted this 14th day of November, 2022.

CLYDE & CO US LLP

*/s/ Edward C. Denby*
Edward C. Denby, Esq.
999 18th Street, Suite 1765N
Denver, CO 80202
Telephone: (303) 301-8950
Facsimile: (303) 301-8974
Edward.Denby@clydeco.us

Amy M. Samberg, Esq.
400 E. Van Buren Street, Suite 440
Phoenix, AZ 85004
Telephone: (480) 746-4580
Facsimile: (480) 746-4556
Amy.Samberg@clydeco.us
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew C. Quisenberry, Esq.
BACHUS & SCHANKER, LLC
101 West Colfax Avenue, Suite 650
Denver, CO 80202
Telephone: (303) 893-9800
Facsimile: (303) 893-9900
Andrew.Quisenberry@coloradolaw.net
***Attorney for Plaintiff***

*/s/ Amy Rutherford*
Amy Rutherford