**Paul Hamilton**
**Property & Casualty Claim Consultant**
**122 Calistoga Road, #314**
**Santa Rosa, CA 95409**
**(707) 545 4109**
**phamil@earthlink.net**

| | |
|---|---|
| **DATE:** | **August 9, 2022** |
| **CASE TITLE:** | **Jeff Diem, Plaintiff v.**<br>**Travelers Personal Insurance Company, Defendant** |
| **VENUE:** | **UNITED STATES DISTRICT COURT**<br>**District of Colorado**<br>**CASE NO. 1:21-cv-02664-KLM** |
| **SUBJECT MATTER:** | **Insurance Claims Handling Expert's Report.** |

**PAST CLAIMS HANDLING EXPERIENCE:** I was employed for 25 years by State Farm Mutual Insurance Company and State Farm Fire and Casualty Company. I began my employment with State Farm in 1964. In 1966, I took the position of an underwriter for automobile insurance policies (State Farm Mutual Insurance Company). In 1969, I became a claims representative for the State Farm Fire and Casualty Company. I initially worked as an in-office claims representative. I then became a field claims representative, with job responsibilities that included the investigation and evaluation of insurance claims under both personal lines and commercial lines policies. Water damage claims to residential structures were probably the most common type of claim that I investigated and evaluated.

In 1981, I became a Claims Superintendent. As a Claim Superintendent, it was my responsibility to implement the policies and procedures that had been adopted by State Farm Fire & Casualty Company for the processing of claims. It was also my responsibility to monitor the conduct of claims representatives to assure their compliance with any prevailing insurance claim handling statutes or regulations. My areas of expertise included first party property damage claims and third-party liability claims, under both personal and commercial lines insurance policies. As a Claims Superintendent I continued to have the responsibility to monitor the investigation, grant settlement authority and to make coverage decisions in connection with first party property damage claims under personal and commercial lines policies, including residential water damage claims. Additional training as a Claims Superintendent included, among other things, an advanced school dealing with precision claims handling in connection with suspected fraudulent claims.

In 1987, I took the position of Divisional Claims Superintendent. As a Divisional Claim Superintendent, I was responsible for managing a division of Claim Superintendents and Claim Representatives. My managerial span of control was approximately 150 employees. My job

responsibilities as a Divisional Claims Superintendent continued to include, among other things, oversight of the investigation and evaluation of both first party and third-party claims under both personal lines and commercial lines policies.

For several years during my employment with State Farm Fire & Casualty Co., I was also responsible for supervising extra-contractual claims in the Northern California region. It was my responsibility to manage extra-contractual litigation both as a Claims Superintendent and as a Divisional Claims Superintendent. I testified many times as State Farm's designated person most knowledgeable in regards to its internal claims handling practices and procedures in Northern California.

In 1990 I elected to take my experience with litigated claims and formed my own independent insurance claims consulting firm.

**CLAIMS CONSULTANCY WORK:** For the past 30-plus years, I have been self-employed as an independent insurance claims consultant. In this capacity I have consulted in hundreds of disputes involving both first and third-party claims, including, among other things, the proper investigation of a claim, the evaluation of coverage and the determination of whether an insurer's claims handling practices comported with industry custom and practice as well as any applicable statutes and/or regulations.

I have testified on many occasions on claims involving first party structural damage issues. As an independent consultant I have testified on behalf of both insurance companies and policyholders.

The primary focus of my consulting work has been on issues that include the covenant of good faith and fair dealing, industry standards pertaining to an insurance company's investigation, evaluation and settlement of insurance claims, the duties of an insured in connection with the presentation of an insurance claim, and an insurance company's compliance with applicable insurance codes, insurance regulations and/or statutes governing claims handling.

I have been retained and have testified as an expert in connection with insurance claims handling practices in both state and federal courts. I have testified as a claims handling expert in approximately 80 actual trials, and have done so on behalf of both insurance companies and policyholders.

Both as an employee of State Farm, and as an independent claims consultant, I have experience with residential homeowners claims where the application of Ordinance & Law coverage was an issue.

My Curriculum Vitae contains additional details regarding my background and experience, and is attached.

**COMPENSATION:** I am being compensated at my usual rate of $245.00 per hour, which includes document review, deposition testimony and trial work. My compensation does not depend on the outcome of this case.

**PUBLICATIONS:** None in the past ten years.

**TRIAL AND DEPOSITION TESTIMONIES:** A list of all cases for which I have provided testimony at trial or deposition during the previous four years is attached.

**MATERIALS RECEIVED TO DATE:**

1. DEFENDANT TRAVELERS PERSONAL INSURANCE COMPANY'S INITIAL DISCLOSURES
   a. Certified Copy of the Travelers Personal Insurance Company's Insurance Policy (Travelers 000001 – 000182)
   b. Non-Privileged portions of Travelers claim file for claim number IHN8570 (Travelers000183 – 002072)
   c. Claim Photographs (Travelers 002073-002115)
   d. Privilege Log
2. Plaintiff's Disclosure of Documents (Diem 000001 – 001438)
3. Complaint and Jury Demand filed August 11, 2021
4. Travelers Personal Insurance Company's Answer to Complaint ….
5. Plaintiff's Supplemental Damages Disclosure
6. Defendant's First Set of Written Discovery Requests to Plaintiffs
7. Plaintiff's Responses to Defendant's First Set of Written Discovery
8. Plaintiff's First Set of Written Discovery Requests to Defendant
9. Travelers' Responses to Plaintiff's First Set of Written Discovery
10. Plaintiff's First Set of Written Discovery Requests to Defendant
11. Travelers' Responses to Plaintiff's First Set of Written Discovery Requests
12. Travelers First Supplemental Disclosures – Documents provided by Foundations Insurance & Financial Services; Documents provided by Singletrack Electric, LLC.
13. Travelers 2nd Supplemental Disclosures – Documents Produced by Bellator Claims. (BELLATOR_000001 – BELLATOR_001611)
14. PRIVILEGE LOG TO DEFENDANT'S SECOND SUPPLEMENTAL DISCLOSURES

Based upon the documents I have reviewed to date, I am prepared to render the following opinions in connection with The Travelers Personal Insurance Company's ("Travelers") investigation and evaluation of the underlying claim presented by its insured, Jeff Diem. To the extent that additional information is provided, I respectfully reserve the right to amend and/or supplement the following opinions. The following opinions are being rendered to a reasonable degree of professional certainty based upon my many years of experience dealing with the processing of insurance claims, as is more specifically outlined above in the Qualification section.

**OVERVIEW:** The litigation filed by Mr. Diem against Travelers represents a legal dispute over the nature and extent of the covered loss arising from a July 6, 2020 discharge of waste water from a drain waste vent pipe in relation to the actual terms and conditions of the underlying Travelers' insurance policy. Based upon the documents I have reviewed to date, it is my opinion that Travelers' investigation, evaluation and processing of the Mr. Diem's claim was consistent with the terms and conditions of the applicable insurance policy.

**OPINIONS:**

1. Travelers' evaluation of Mr. Diem's claim was consistent with the terms and conditions of the underlying Travelers insurance policy. This opinion is based upon the following:
   - **a.** The underlying Travelers' Landlord Dwelling Policy insures the premises located at 4565 Elm Court, Denver, Colorado, against direct physical loss unless otherwise excluded.
   - **b.** Under the terms and conditions of the Travelers' insurance policy, loss caused by wear, tear, deterioration, latent defect, inherent vice, rust or other corrosion is specifically excluded. Based upon the photo documentation contained within the claim file, Travelers reasonably concluded that the cracked drain waste vent pipe was the product of long term wear, tear, deterioration, etc., and was not covered under the Travelers insurance policy.
   - **c.** As the Travelers policy specifically excludes "rot", Travelers reasonably concluded that the rot damage to the sill plate would not be a covered loss.
   - **d.** The Travelers insurance policy also specifically excludes the following: *We do not cover loss to the system or appliance from which the water escaped.* Travelers reasonably concluded the cracked drain waste pipe vent was not a covered loss under the terms of the Travelers insurance policy.

2. There is a dispute between Travelers and Mr. Diem as to the application of PROPERTY – ADDITIONAL COVERAGES – 9. Ordinance or Law. This additional coverage reads as follows: *9. Ordinance or Law: (a) You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates: (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against.*
   Mr. Diem seemingly argues that as his property was not up to code, it is the contractual duty of Travelers to bring it up to code. I respectfully disagree for the following reasons:
   - **a.** The additional coverage pertaining to Ordinance or Law applies only to increased costs actually incurred by Mr. Diem. I have seen no indication that Mr. Diem has incurred any costs in connection with an Ordinance or Law upgrade. It is consistent with both the terms and condition of the Travelers insurance policy, as well as with prevailing industry custom and practice, that even arguably assuming there is some coverage afforded under the Ordinance or Law coverage, no contractual duty to pay accrues unless and until the expense is actually incurred.

**b.** The additional coverage pertaining to Ordinance or Law applies only to the increased costs incurred by Mr. Diem due to an enforcement action pertaining to any applicable ordinance or law. To date, Mr. Diem has provided no documentation to Travelers that would establish the fact of an enforcement action on the part of the city or county building officials in connection with the repair of Mr. Diem's water damage claim. It is consistent with both the terms and conditions of the Travelers insurance policy, as well as with prevailing industry custom and practice, that no amounts are due and payable under Ordinance and Law coverage absent documentation of an enforcement action by the applicable governing body.

**c.** The additional coverage pertaining to Ordinance or Law applies only to the following: *(1) the construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against.* Even had a governing body issued an enforcement action requiring Mr. Diem to bring the cracked drain waste pipe vent up to code, Travelers reasonably concluded that such an enforcement action would not have been covered, as the cracked drain waste vent pipe was not damaged by a Peril Insured Against, and was not a covered item under the Travelers policy. Travelers also reasonably concluded that the electrical components were not damaged by a covered peril.

**d.** Likewise, Travelers reasonably concluded it was not contractually obligated to bring the electrical up to code, as the electrical was not damaged by a covered peril.

**e.** I would also note that Travelers has not denied Mr. Diem's claim for coverage under the Ordinance or Law provision of the policy. Travelers simply seeks documentation to confirm what, if any, code upgrades were being enforced prior to making any final coverage determination.

**f.** In a claim note dated August 24, 2020, Mr. Sicheri acknowledged that "code items would be needed for the affected areas, to include plumbing, electrical and reinstall of furnaces …." But Mr. Sicheri also acknowledged that he would need a report from a City inspector to review.

**3.** Under the terms and conditions of the applicable Travelers insurance policy, Mr. Diem's contractual right of recovery is set forth as follows: *PROPERTY – CONDITIONS: 3. Loss Settlement: b. Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following: (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction for depreciation, but not more than the least of the following amounts: (a) The limit of liability under this policy that applies to the building; (b) the replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or (c) The necessary amount actually spent to repair or replace the damaged building.* Based upon the documents produced by Mr. Diem, it is very difficult to determine the amount he has actually spent to repair the covered damage to his property. Mr. Diem seemingly has made no effort to remove the costs associated with his upgrades from the claim he has presented to Travelers. (For example, one of the invoices Mr. Diem produced during discovery was from the Home

Depot, and was for the replacement of new appliances – not related to his claim.) Until Mr. Diem can provide a more accurate accounting of the necessary amounts he actually spent to repair the damage to the covered portions of his building, there is no way for Travelers to accurately calculate whether any additional amounts are due and owing to Mr. Diem.

  **a.** I would also note that Mr. Diem is entitled to receive like kind and quality repairs arising from the covered cause of loss. Based on the documentation contained within the claim file, seemingly Mr. Diem's claim to Travelers may include upgrades. For example, on September 3, 2020, Mr. Diem's agent Brian Richardson wrote to Mr. Diem: ". . . but I know you're trying to commit their (Travelers') funds to expensive upgrades before they are done. . . . " (DIEM 001067)

**4.** Notwithstanding the legal dispute between Mr. Diem and Travelers regarding the application of the Ordinance and Law coverage to his claim, Mr. Diem is making a claim to Travelers for alleged code upgrades (plumbing and electrical plus overhead and profit) totaling $49,064.75. The limit of liability under Mr. Diem's Ordinance or Law Coverage is 10% of the Coverage A – Dwelling Limit of $197,000, or a total of $19,700.00.

**5.** Mr. Diem is making claim to Travelers for 13 months loss of rents for both his upper and lower units, in the combined amount of $36,985.00. The Travelers insurance policy contains the following coverage pertaining to Loss of Use: *1. Fair Rental Value: If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others … not fit to live in, we cover the amount of fair rental value of such premises …. Payment will be for the shortest time required to repair or replace such premises ….* Based upon the documentation contained within the claim file, Travelers complied with its contractual duties owed to Mr. Diem under the policy's Loss of Use coverage. This opinion is based upon the following:

  **a.** The duration of the loss of use coverage is limited to the shortest time required to repair or replace the covered damages. Based upon the documentation contained within the claim file, Mr. Diem agree with Travelers that a reasonable time frame to repair the covered damages would have been 4 months.

  **b.** Travelers paid Mr. Diem for four months loss of rents in connection with the downstairs unit that was rendered uninhabitable due to the covered loss.

  **c.** Mr. Diem's upstairs tenant did not move out until September 20, 2020 – over 60 days after the date of loss. Travelers reasonably concluded that the upstairs unit was not rendered uninhabitable due to the subject loss, and therefore, would not be subject to any payment for alleged loss of rental income.

  **d.** On September 21, 2020, Mr. Diem wrote to Mr. Sicheri: " … Also my upstairs tenant moved out 09/20. The property is now fully vacant. . . . Please be aware that it is illegal for me to rent either unit at the property and the property is deemed 'uninhabitable' as it violates the Colorado Warranty of Habitability Act

Statute requiring heat. As we've discussed before, I cannot reinstall the furnaces until we get the wall reframed, replumbed, and drywalled. ...."

**e.** Mr. Diem himself conceded the upstairs unit was not damaged. On September 22, 2020, Mr. Diem wrote to his agent Brian Richardson: "The upper unit by proxy is affected by this claim and while it is not damaged, I cannot rent it."

**f.** Based upon the documentation contained within the claim file, it would be reasonable to conclude that the upper unit was not rendered uninhabitable due to the subject loss.

**g.** Even if one were to arguably assume the upstairs unit was rendered unfit to live in due to the loss, Travelers concluded the period of restoration (shortest time required to repair or replace) ended on November 6, 2020. As the upstairs tenant did not move out until September 20, 2020, the insured's recovery for the upstairs unit's loss of use would be just a little over 30 days.

**6.** Travelers conducted and diligently pursued a reasonably thorough, fair and objective investigation in connection with Mr. Diem's claim. No new or additional investigation on the part of Travelers would have had any bearing on the current legal dispute with Mr. Diem regarding the application of the Ordinance and Law coverage to his claim. This opinion is based in part upon the Claim Chronology that follows. The Claim Chronology sets forth a reasonable, step by step process implemented by the Travelers' claim professionals in the processing of Mr. Diem's claim.

**7.** Travelers conducted an investigation that was in compliance with prevailing industry custom and practice. By "industry custom and practice" I mean there is a protocol I would expect to see insurers follow when investigating and evaluating similar claims. In this case the protocol followed by Travelers in processing Mr. Diem's claim was a reasonable one. This opinion is based in part upon the Claim Chronology that follows as well as my experience in the industry. The Claim Chronology sets forth a reasonable, step by step process implemented by the Travelers' claim professionals in the processing of Mr. Diem's claim.

In addition to promptly paying all undisputed amounts to Mr. Diem, Travelers provided reasonable explanations to him, detailing those portions of his claim that were not covered by the Travelers policy, and why they were not.

**8.** There were no unreasonable or unexplained delays on the part of Travelers in the processing or payment of the undisputed portions of Mr. Diem's claim that substantially affected his contractual right of recovery. All undisputed portions of Mr. Diem's claim were paid within a reasonable period of time. This opinion is based upon the Claim Chronology that follows.

**a.** Travelers received first notice of loss on July 6, 2020.

**b.** Travelers inspected the loss on July 13, 2020. Due to restrictions arising from the Covid 19 pandemic, Travelers' inspection was conducted virtually.

**c.** The very next day, on July 14, Travelers issued an undisputed payment to Mr. Diem in the amount of $7,031.13.

**d.** On or around July 22nd, Mr. Diem provided Travelers with a revised mitigation estimate from Denver Flood.

**e.** On or around July 29, 2020, Travelers conducted a second virtual loss inspection.

**f.** On or around July 30, 2020, Travelers issued a supplemental payment to Mr. Diem in the amount of $1,975.74.

**g.** On August 5, 2020, Travelers documented receipt of a supplement from the water mitigation company – an additional layer of drywall was found.

**h.** On August 7, 2020, Travelers issued a supplemental payment to Mr. Diem in the amount of $200.19.

**i.** On August 13, 2020, Mr. Diem provided Travelers with a reconstruction estimate.

**j.** On August 18, 2020, due to Mr. Head's hurricane deployment, the Diem claim was reassigned to Justin Sicheri.

**k.** On August 24, 2020, Travelers conducted a re-inspection of the loss. This was an in-person inspection that included Mr. Sicheri, his unit manager Mr. Horan, Mr. Diem, and Mr. Diem's plumber.

**l.** On August 28, 2020, Travelers issued a supplemental payment to Mr. Diem in the amount of $9,403.89. Mr. Diem prepared a "screen shot" of a spreadsheet he had created to track payments. As of August 28th, Mr. Diem had paid out $8,998.77 in covered repairs, and he had received from Travelers a total of $10,004.96. As of August 28th, his claim had been overpaid by $1,007.19.

**m.** On August 31, 2020, Mr. Napolitan pulled a plumbing permit. The plumbing project was valued at $3,800.00. The permit fee was $51.00.

**n.** On September 2, 2020, Travelers wrote: "Per our discussions when we completed the onsite inspection, I need the City to inspect and provide documentation to show what is being code enforced to bring the plumbing and other items in the affected areas up to code. This is needed to confirm the items requested are enforced by the city. Without the documentation I cannot approve any code upgrade items for the affected areas as per the policy language."

**o.** On September 9, 2020, Mr. Sicheri documented the following in the claim notes: Received supplement item request for plumbing and plumbing related code items and electrical items as a result of the water loss – did not observe any electrical items damages as electricity was on and working at the time of inspection. Discussed with UM and PFT Hennessy and agree that plumbing system is not covered per the policy and code upgrade items requested for plumbing and electrical items therefore would not be covered. Also rot to structural wall not covered. Travelers issued a detailed coverage position letter to Mr. Diem.

**p.** On September 21, 2020, Mr. Diem wrote to Travelers: On September 11, I sent over the files initially sent on 08/13 for review.

- **q.** On September 22, 2020, Mr. Sicheri documented the following in the claim notes: Received e-mails from policyholder with supplemental estimate request items. Agree with supplement estimate items for duct cleaning only at this time as HVAC and ducts affected per invoice. Travelers issued a supplemental payment to Mr. Diem in the amount of $1,368.25.
- **r.** On September 25, 2020, Mr. Sicheri documented a discussion with Mr. Diem in which they discussed specific rebuild line items. Mr. Sicheri noted that he agreed with some of Mr. Diem's requests for additional consideration. Travelers issued a supplemental payment to Mr. Diem in the amount of $2,496.88.
- **s.** As of October 2, 2020, Travelers had estimated Mr. Diem's covered property damage loss at $24,594.65.

**9.** Under the terms and conditions of the underlying Travelers' insurance policy, there are certain duties in the event of loss that Mr. Diem is required to comply with. Among other things, Mr. Diem is required to cooperate with Travelers during its investigation of his claim. Based on the documentation I have reviewed to date, it would be reasonable to conclude that Mr. Diem's lack of cooperation has affected Travelers' ability to resolve his claim:

- **a.** In the first instance, Travelers is entitled to a detailed accounting of the amounts necessarily spent by Mr. Diem to repair the covered damage to his property. To date, I have seen no accurate accounting of what amounts Mr. Diem has actually spent (much less necessarily incurred) to repair the covered damage.
- **b.** On several occasions, Travelers requested documentation from Mr. Diem to confirm whether there had been a code-related enforcement action on the part of the city or county building officials. Mr. Diem has yet to provide Travelers with any documentation to support an actual enforcement action.
- **c.** Mr. Diem's current dwelling-related claim against Travelers is allegedly based upon an estimate prepared by his public adjuster, Bellator Claims Resolution, L.L.C. Estimates prepared by public adjusters are typically unreliable and inflated. In this case, Mr. Diem's public adjuster has a direct financial interest in the outcome of Mr. Diem's claim against Travelers. Mr. Diem's public adjuster is claiming an entitlement to 25% of Mr. Diem's recovery. Mr. Diem has effectively agreed to self-insurer his covered loss by the amount of the public adjuster's fee. In this case, had the public adjuster been able to convince Travelers to pay based upon his estimate of $163,624.88, the public adjuster would have been entitled to a recovery in the amount of $40,906.22. I would also note that the public adjuster's "estimate" lacks credibility in that from all appearances, the public adjuster simply took the estimate prepared by Mr. Diem in the amount of $133,300.03 (which was disputed by Travelers), and added his 25% fee to come up with his estimate in the amount of $163,624.88. The public adjuster's 25% fee for service should not be passed on to Travelers.
- **d.** I would also note that the public adjusting firm has a close working relationship with the law firm representing Mr. Diem. Included within the documents

produced by Bellator Claims was information on five or six other claims Bellator had referred to this particular law firm. It is also clear that Mr. Diem's current law firm views Bellator Claims as a "quasi" client, as it seemingly keeps Bellator in the loop regarding the status of the litigation. This would make sense, as from all appearances, Bellator would claim its percentage of any extra-contractual recovery against Travelers. The public adjuster's financial interest in any extra contractual recovery underscores the inherent conflict of interest held by the public adjuster in the outcome of this claim, and highlights why, the public adjuster had little interest in resolving the underlying claim on its merits.

**10.** Mr. Diem is apparently claiming an entitlement arising from Travelers' alleged violations of C.R.S. section 10-3-1115 and C.R.S. section 10-3-1116. I respectfully disagree for the following reasons:

- **a.** Recovery under this statute presumes the presence of a "covered benefit." The nature and extent of any additional "covered benefit" arising from the waste water discharge occurring in July of 2020, is a matter of fair and reasonable dispute, including any reasonable arguments regarding the application of Travelers' ordinance or law coverage.
- **b.** Mr. Diem would only be entitled to recovery under C.R.S.10-3-1116 if Travelers' processing of his claim was unreasonable. By statute, Travelers' evaluation of the claim would only be unreasonable if the coverage position was taken "without a reasonable basis for that action." (See C.R.S. 10-3-1115) The Travelers claim file is well documented with reasonable explanations for its investigation, evaluation and processing of Mr. Diem's claim at each step in the claims process. Travelers' processing of the subject claim was not unreasonable and not in violation of C.R.S. 10-3-1115.

The above opinions are based in part up the following claim chronology

**Diem v. Travelers**
**Claim Chronology**

**July 6, 2020:** Reported date of loss.

First Notice of Loss to Travelers: Cause of Loss: Waste pipe from upstairs toilet has cracked. Building and exterior damages. Mold – Interior. Basement flooding/sewer backup. Water damage – ceiling walls. (TRAVELERS 000183-185) Contents: No. Additional Living Expenses: No. (TRAVELERS 000216-222)

**July 7, 2020:** Brian Head documented the following in the claim notes: Spoke with the insured who stated that they have had a leak that has occurred in the waste drain line. They are unsure as to what caused this to leak however are currently working on repairs. Advised of virtual inspection scheduled for 07/13. (TRAVELERS 000192)

**July 13, 2020:** Mr. Head documented the following in the claim notes: Damage verification: Inspection was completed with the insured virtually this afternoon. I was led into the HVAC room to begin inspection to find the smaller inspection hole was cut in order to allow access for the repairs. Insured has reported that they have tested the walls for moisture and it appears that the entire wall will need to be removed and replaced. Further consideration to remove and reset the two water heaters and two furnaces have been provided. Repairs consist of removing the wall and replacing drywall within the HVAC room.

Within the bathroom which is on the other side of the shared wall it has been discovered that this drywall too is saturated and in need of replacement. For these repairs to be completed the vanity, sink and two cabinets will need to be removed and reset along with the bath tub and toilet. Repairs will occur in the affected drywall and tiled flooring and once completed the appliances will be moved back into the room. Due to the complexity of the job I have applied O&P required task includes electrician, HVAC, plumbing, drywall and tile flooring. Estimate has been completed and sent to UM Chase for further review. (TRAVELERS 000192)

Mr. Head documented the following in the claim notes: Coverage: Insured holds a HQF53 CM landlord policy. At this time a claim has been filed as there was a break in a sewage drain line housed within the wall between the bathroom and the HVAC room. This caused raw sewage to spill out onto the concrete within the HVAC room as well as the tiled flooring within the bathroom. Further damages were discovered to the drywall as well. Review of the policy finds that coverage will extend for the resulting water damage from the leak, however, the actual repairs to the pipe from failing due to wear and tear are denied at this time as wear is an exclusion. …. This is not a water backup as there was a clear split in the line. …. Repairs to the line have been completed however the pipe was kept by the insured. No coverage concerns at this time. A partial denial will be formulated after the estimate for repairs is approved. (TRAVELERS 000193)

INVOICE: ENVIRO EXCELLENCE CONSULTING AND TESTING: $956.00. (TRAVELERS 000817)

**July 14, 2020:** Chase Cordial documented the following in the claim notes: Management Review: I reviewed the file, notes and photos. I am in agreement that the affected areas of the bathroom and mechanical room need to be removed, cleaned and replaced. Reviewed estimate. Okay to proceed. (TRAVELERS 000193)

Mr. Head issued a claim payment letter to the Insured: I am providing a copy of our approved quote for the repairs to you home as an attachment within this e-mail. Please note that a payment has been issued in the amount of **$7,031.13.**

- Full Cost of Repairs: $9,085.28
- Minus Recoverable Depreciation: <$1,055.15>
- Actual Cash Value: $8,031.13
- Deductible: <$1,000.00>
- Payment: $7,031.13

Please share a copy of this quote with the contractor of your choice for the repairs. In the event that additional consideration is needed such as material or labor, please have your contractor reach out to us in the form of a supplement prior to the work being completed to ensure that a review can occur. (TRAVELERS 000193)

Mr. Head documented the following in the claim notes: Was able to reach out to the insured and went over the payment amounts and the estimate for repairs. Insured advised that he will likely be sending supplements in for consideration as he is expecting the detach and reset for the water heater and furnace units to be around $1k. I advised my e-mail to send documents. (TRAVELERS 000194) Closing the file at this time pending future contact from insured. Advised with any supplemental concerns to e-mail me for review. Nothing further. (TRAVELERS 000194)

Mr. Cordial documented the following in the claim notes: I reviewed and approved this partial denial for the failed pipe due to wear and tear. (TRAVELERS 000195)

Travelers issued payment to the Insured in the amount of **$7,031.13.** (TRAVELERS 000231)

INVOICE: HIGH WATER PLUMBING AND HEATING: Pulled 2 furnaces and 2 water heaters.
INVOICE AMOUNT: $993.00. (TRAVELERS 000238)

Jeanne Spencer, President, REI Lab wrote to Scott Pfefffer (Enviro Excellence) regarding asbestos. (TRAVELERS 000699)

DENVER FLOOD AND FIRE, LLC
ESTIMATE
PREPARED BY: JEFF DIEM
REPLACEMENT COST VALUE: $133,300.02
LESS DEDUCTIBLE: <1,000.00>
NET CLAIM: $132,300.03

(DIEM 001185) (PHOTOGRAPHS 001217 – 1231)

**July 15, 2020:** Enviro Excellence: Limited Asbestos Inspection Report (TRAVELERS 000689 – 000698)

Maria Colvett, Foundations Insurance, wrote to Mr. Diem: We are following up on your recent property claim that occurred July 6, 2020 on your Travelers Landlord Dwelling Fire Policy … to see that things have been progressing well. If there are any issues or questions you have regarding this claim, please let us know how we can help. Thank you for your kind referrals. (DIEM 000992, 000993)

**July 16, 2020:** Denver Flood (Joey) wrote to Mr. Diem and Mr. Head: Please find the attached sewage mitigation/mold remediation estimate for your review. This estimate is for mitigation/remediation only …. Joey Herrmann, Project Manager, Denver Flood and Fire. (DIEM 000981)

Mr. Head replied to Mr. Herrmann: The insured has been paid in full for all water mitigation services. (DIEM 000982)

Mr. Diem replied to Mr. Head: Correct, in sending a check, however it is going to be low. I still need to submit to for the HVAC and plumbing removal, too. Final rebuild is still TBD. I want to be sure Joey's initial scope is approved so that we're all aware the mitigation will be higher than your initial estimate. Are we in agreement so that Joey can continue and that you were aware further supplement may be coming. Also when can I expect a payment for loss of use for July? (DIEM 000983)

Mr. Head replied to Mr. Diem: After a review of the original estimate it appears that the water mitigation work that has been afforded for at this time is in the amount of $3,538.14. In that respect there is not an additional payment needed for this work to be completed and they are welcome to begin immediately. You are welcome to submit supplements for review for any additional work that your contractors are advising is necessary. Please submit the supplements prior to getting the job started …. (DIEM 000985)

Mr. Diem replied: Thank you Brian. Joey and I are on the same page for the MIT portion. Once I get the plumbing invoice for the water heater I'll submit both that and the furnace moving to you.

**July 17, 2020:** Denver Flood and Fire wrote to Mr. Diem: I attached the work authorization for 4563 Elm Court …. Please sign and e-mail the work authorization back to me …. (DIEM 000990)

Mr. Diem wrote to Mr. Head: Following up on the invoice from Enviro Excellence. I know you sent me a check and I'm waiting for it to arrive. Looks like we're short $356.00. How would you like me to proceed?

Mr. Head replied: Thank you for sending this in. After review it appears that they have removed both of the furnace units and detached and reset one of the water heaters while pulling the other. Did they give you an estimate for the cost associated with resetting everything once the work has been completed? I have also added the asbestos results to the file and will be working on a supplemental payment to account for the difference.

Mr. Diem replied: You're correct. One water heater was temporarily reset in order to provide hot water to the upstairs tenant thereby saving Travelers the Loss of Use upstairs. It'll need to be D&R one more time with just resets on the furnaces and other water heater. To reinstall we're looking at about $3,700. I'm being told there's approximately 20 hours with two workers

to properly reinstall the units. Also, when can I expect the Loss of Use for July in the lower unit please?

**July 20, 2020:** Metropolitan Drain Cleaning: Estimate: $14,100.00 – Code upgrade for work to be performed July and August 2020. (TRAVELERS 000779)

**July 21, 2020:** Denver Flood and Fire: Estimate: This estimate is a revised estimate to include additional mold and water damage mitigation discovered during the original sewage mitigation project …. TOTAL: $5,750.56. (TRAVELERS 000245 – 000266)

Mr. Diem wrote to Mr. Head: Brian, I just received notice from my agent that my claim was closed. Can you please help me understand why? Joey at Denver Flood and Fire is submitting for a supplement as he found damage leading towards the kitchen. In addition, we still need to address whatever reconstruction needs to be done as well …. Finally, please let me know when I can expect to receive my first Loss of Use payment. (DIEM 000987)

Brian Richardson wrote to Mr. Diem: My staff is merely trying to reach out to communicate but we aren't trying to open up an already open can of worms with every notification. We have a process to notify the client when we receive claim documents to that is what Maria did. As for why it is closed I have no clue. They probably close them and reopen them as I know they are measured by regulators on how many open claims they have out. Please work with the adjuster on the details of this claim, seems like they are being very fair and reasonable and we can't really help unless several days of unresponsiveness have past. (DIEM 000988)

Denver Flood and Fire wrote to Mr. Diem: Attached is the revised mitigation estimate that includes additional water damage, mold mitigation work, bathroom, closet and kitchen …. (DIEM 000996)

**July 22, 2020:** Mr. Diem wrote to Mr. Head: Brian, please confirm receipt and approval to proceed. There is additional work that needs to be completed based upon Joey's assessments. Also, when can I expect the initial check and loss of use check for July? I have not received either yet and I know you sent the first payment. (DIEM 000999)

Mr. Head documented the following in the claim notes: Supplemental water mitigation has been provided. Review of the additional work that is advised does not appear consistent with the photos that have been taken. Another virtual inspection has been requested to further review. (TRAVELERS 000194)

Mr. Head wrote to Denver Flood and Fire: I have had an opportunity to review the additional damages that are being listed as well as review the photos that were attached. With this amount of additional repairs it appears that we may need to do another virtual inspection to validate the work that they are advising is necessary. From review of the drywall in the bathroom it appears that the only wall that has been taken down is the wall between the

bathroom and mechanical room. By chance can we take another look via virtual inspection? …. (TRAVELERS 000196)

Mr. Diem wrote to Mr. Head: This is fine by me. I just spoke with Joey from DFF and he'll be there as well. Brian, can you please confirm when I will be receiving payment for loss of use? (DIEM 001001)

Mr. Head wrote to Mr. Diem: I have updated my calendar and will plan on speaking with you then. Loss of use payments are only issued as they are incurred. Lost rental income for the month of July cannot be processed until August 1. (DIEM 001001)

Mr. Diem replied: So Travelers processes the month in arears. I understand. (DIEM 001002)

**July 24, 2020:** Mr. Diem wrote to John Napolitan: Spoke with Denver inspector. They're saying galvy is permissible however it cannot be reused. I'm not sure how on earth we can reframe the wall and keep the galvy. In addition I attached a number of codes which throw wrenches in the water lines …. I may pay the inspector to come out and give me a list of upgrades that are required …. (DIEM 001005)

**July 29, 2020:** Denver Flood wrote to Mr. Diem: I attached the revised mitigation estimate with the omission of duplicate items ….. (DIEM 001009)

Mr. Head documented the following in the claim notes: Supplemental water mitigation review. Consideration for the power distribution light has been extended as the property was unable to handle the voltage needed to power all of the fans. Additional consideration extended for contamination barrier to effectively treat the mold that was discovered. HVAC Room: Consideration has been provided to extract the water off of the cement flooring. Additional consideration provided for the negative air fan that was needed. Pre-validated quote has been uploaded to the file and bid item supplement has been sent to UM Chase for further review and approval. (TRAVELERS 000197)

Mr. Cordial documented the following in the claim notes: Management Review: I reviewed the updated estimate for the water loss. Vendors invoice reviewed the CP BH made additions for containment and power distribution box. I am in agreement with the updated scope and supplemental ACV payment generated. Okay to proceed. (TRAVELERS 000197)

Mr. Head documented the following in the claim notes: Was able to complete the virtual inspection with the insured as well as his contractor present. …. At this time additional damages have been discovered within the ceiling of the bathroom that will require the ceiling to be removed and replaced. The wall between the bathroom and the HVAC room has since been removed to allow for proper mitigation. Will update estimate based off of additional items viewed …. (TRAVELERS 002049)

**July 30, 2020:** Mr. Head wrote to Mr. Diem: Just wanted to reach out to provide you with our most updated copy of the estimate for repairs to your property. At this time all of the changes have been reviewed and approved. Please be on the lookout for the additional payment in the amount of $1,975.74. If you have any additional questions, please reach out. (TRAVELERS 000198)

**August 3, 2020:** Duct Works: Proposal: Interior cleaning of the 2 heating/cooling systems: Invoice Amount: $1,100.00 (TRAVELERS 000364)

DENVER FLOOD AND FIRE
ESTIMATE: JEFFDIEMREVISED
NOTE: This estimate is a revised estimate to include additional mold and water damage mitigation discovered during the original sewage mitigation project ….
REPLACEMENT COST VALUE: $5,288.87
(BELLATOR 000939)

Mr. Diem wrote to Mr. Head: The initial check for $7,031.13 arrived today. I'll be mailing the asbestos company, plumber and HVAC company their payments from this. …. Also, in regards to Loss of Use I sent you a copy of the Lease showing $950 a month …. Can you please have a check sent out for the lost rent too? (TRAVELERS 000851)

Denver Fire wrote to Brian Head: An update on the mitigation to date. The revised mitigation has been completed, one additional dump/hall is required (photos added in Xactimate) due to amount of debris removed from ceiling and wall cavities and kitchen demo. After removal of bathroom ceiling an additional layer of ceiling was found and currently covering subfloor (photos added in Xactimate) that is needed to be remediated. This ceiling layer has undergone an asbestos survey per Enviro Excellence report and is required prior to any further ceiling demolition. …. (TRAVELERS 000851)

**August 5, 2020:** Mr. Head wrote to Mr. Diem: I have received the supplemental estimate for the additional water mitigation work . . . . I will provide you a copy of the most up to date estimate for repairs upon approval. Review of the estimate shows that bid items are only listed for water mitigation work …. Previous payments to you have included consideration for previous work that has been completed. I'll be including the loss of rental income on the supplemental check …. (TRAVELERS 000850)

Mr. Diem wrote to Mr. Head: Thanks Brian. Can you please clarify what you're saying about payments, bid items and water MIT? I'm not understanding your verbiage. I also appreciate the Loss of Use being sent out.

Denver Flood and Fire wrote to Mr. Diem: I don't understand that e-mail at all. I would recommend that you reach out to Brian and get a written confirmation that the additional asbestos testing will be covered. Once we have the test results back I would send another

revision for the estimate for the drop down ceiling to be removed in the bathroom. If it is non-detect I'd recommend getting that approval first so that you're not out of pocket unexpectedly.

Mr. Diem wrote to Mr. Head: I also wanted to confirm that you received Joey's request for additional ACM testing due to an additional ceiling material that was hidden during the initial inspection …. (TRAVELERS 000850)

Mr. Head wrote to Mr. Diem: I'll be sure to reach out to you to answer the questions in regards to how items are listed within my quote once the final approval has been provided. I have provided the copy presented to me for the additional water mitigation work that was recommended. There is no mention of the asbestos testing. Please proceed with having the ceiling tested …. (TRAVELERS 000849)

Mr. Head documented the following in the claim notes: Another supplement has been received by the water mitigation company. During the demo they found an additional layer of drywall within the ceiling … Additional consideration has been provided for the additional testing that will be needed as well as to remove the additional drywall. Updated supplemental estimate has been sent to UM Chase for review. (TRAVELERS 000196)

Mr. Cordial documented the following in the claim notes: Reviewed and approved the update estimate …. (TRAVELERS 000198)

**August 7, 2020:** Mr. Diem wrote to Mr. Head: The results of the most recent test were non-detect. Joey can continue. (TRAVELERS 000849)

Mr. Head replied to Mr. Diem: That sounds great. I have updated our figures and am just waiting for the final payment approval from management …. (TRAVELERS 000849)

Mr. Head documented the following in the claim notes: Reviewed the claim with the insured as it relates to the loss of rental income for the unit. The property houses two separate tenants, one has been displaced due to the claim while the hot water has been reconnected in order to still provide services to the other remaining unit. Leasing agreement has been received …. Payment will be sent to UM Chase for approval. (TRAVELERS 000198)

Mr. Head documented the following: Payment has been sent to UM Chase in the amount of $997.09: Building Supplement: $200.19; Additional Living Expenses: $796.90. (TRAVELERS 000199)

Mr. Head wrote to Mr. Diem: I just wanted to reach out in regards to the claim. At this time I have received the approval. Attached is our most up to date copy of the estimate for repairs. Please note a payment in the amount of **$997.09** has been issued. I will be closing the claim at this time as all payments have been approved and issued. If any supplemental concerns arise please contact the 999 number to have the claim reopened (TRAVELERS 000200)

Mr. Head documented the following in the claim notes: Closing the file at this time pending future activity …. (TRAVELERS 000200)

SINGLETRACK ELECTRIC: INVOICE: $4475: Electrical installation …. (TRAVELERS 000365)

SMP HOLDINGS: Invoice Amount: $488. Asbestos Inspection. (TRAVELERS 000365)

Travelers issued payment to Mr. Diem in the amount of **$997.09.** (TRAVELERS 000368)

**August 10, 2020:** High Water Plumbing: Invoice Amount: $3628: reinstall 2 water heaters, 2 furnaces. (TRAVELERS 000402)

Mr. Diem wrote to Enviro Excellence: I'll get this submitted. Brian was reassigned Friday to the East Cost for the hurricane. I've left a voice mail for his supervisor to assign me a new adjuster. (DIEM 001031)

**August 13, 2020:** Mr. Diem wrote to Chase Cordial: I spoke with Jordan at Travelers and she suggested e-mailing you. Brian closed out my claim since he had to go work the hurricane and requested that it be reassigned. A couple of things please: (1) the two checks were mailed to the wrong address …. (2) I'd like to have a new adjuster assigned please so we can work on the reconstruction portion. I have estimates to send in for approvals. In addition I need to figure out what was allocated where in the checks sent.

Mr. Cordial replied: I've added the request to the file. I have also requested the claim be reopened and reassigned.

Jason Mostek wrote to Mr. Diem: I will be your new claims adjuster for file resolution …. Please send over any estimates/proposals/invoices for review. I'll be happy to assist in finalizing any outstanding repairs. (TRAVELERS 000203)

Mr. Diem wrote to Mr. Mostek: Thanks for calling me back. Attached is the reconstruction estimate and the bids for MEP. …. (TRAVELERS 000865)

Mr. Mostek replied to Mr. Diem: Received, will upload to your file for review. (TRAVELERS 000871)

JEFF DIEM
ESTIMATE: DIEM4565 ELMCT
ESTIMATOR: JEFF DIEM
SUMMARY FOR DWELLING
REPLACEMENT COST VALUE: $41,156.79
(BELLATOR 000970)

**August 18, 2020:** Mr. Mostek documented the following in the claim notes: Contacted the policyholder. He stated that demo is done and MIT is done and the home is a rental and estimate submitted for Xactimate and PH owned Paul Davis franchise and there are code upgrades for the plumbing and electrical and water heaters and furnaces and PH stated that he had a vertical stack pipe fractured for a waste vent that carried waste from upstairs bathroom down pipe in wall between mechanical room and bathroom. Mold was also found in kitchen adjacent to bath. PH advised lots of code upgrade items and other items. Handling adjuster did virtual inspects. . . . . Advised policyholder I would be reviewing items concerning the rebuild and specifically the supplemental items sent in and would need to review policy coverage to determine if coverage would be afforded. Advised I would follow up once the review was completed ….. (TRAVELERS 000204)

The claim was reassigned to Justin Sicheri. (TRAVELERS 000204)

Mr. Sicheri documented the following in the claim notes: Contacted the policyholder – advised of the need to reinspect in person with PFT. (TRAVELERS 000205)

Mr. Diem wrote to Justin Sicheri: Nice to virtually meet you. Can you please give me a call when you have a moment?

**August 24, 2020:** Mr. Sicheri documented the following in the claim notes: Met with policyholder and plumber and Unit Manager Horan, inspected the home and observed the water PD and code items needed for just the area affected. Agree that code items would be needed for the affected areas to include plumbing, electrical and reinstall of furnaces, water, due to the water damage. Sewer pipe cracked and caused severe property damage to the wall framing and advised that the framing would not be covered due to rot and code items for the affected areas would be covered and would need City inspection report to review …. Policyholder and plumber agreed. (TRAVELERS 000205)

**August 26, 2020:** Mr. Diem wrote to Mr. Sicheri: I've met with the framer and plumber. … Is it possible to please get a first draw so I can order materials …. (TRAVELERS 000869)

Tyler Horan documented the following in the claim notes: Management Review: Reviewed for supplement authority. In agreement with revisions as outlined by claim professional. File is pending receipt of code estimate to be reviewed. In agreement with settlement and LOR payment owed.

**August 27, 2020:** Mr. Diem wrote to Mr. Mostek: I'm leaving town until September 3. Plumber is working on permits. Can you please send loss of use payment for the lower unit for the month of August? $950. (TRAVELERS 000869)

**August 28, 2020:** Mr. Sicheri documented the following in the claim notes: Received e-mail from policyholder requesting additional fair rental income payment for the month of August for lower unit … Agree with August fair rental market payment of $950 per previous handling

adjuster's notes that lower unit is still rented to tenant …. Reviewed prior estimate and supplemental estimate items and updated estimate accordingly. Code items for plumbing and electric still pending City red flag code inspect sheet. ….

- Payment Breakdown
- Coverage A – RCV: $19,981.16
- Depreciation: <$1319.13>
- Deductible: <$1,000.00>
- Prior Payment: <$9,208.06>
- Net: $8,453.89
- Coverage D payment: $950.00
- Water MIT Payment: $5,288.90
- Rebuild: $8,627.31
- Asbestos Abatement: $1444.00
- HVAC/Water Heater: $4,621.00

(TRAVELERS 000205)

Travelers issued payment to Mr. Diem in the amount of **$9,403.89.** (TRAVELERS 000228)

Mr. Diem wrote to Mr. Sicheri: Thanks for the call earlier. Attached is a screenshot from the spreadsheet I created to track payments. On the left is payments from Travelers, not including my deductible. On the right side is what I've paid to vendors to date …. You will see I've made notes that I was shorted $495.96 for the initial invoice for HVAC removal and the initial asbestos testing. I also believe I'm missing $488 for the second round of asbestos testing. I am unsure as well if I received the additional amount approved by Brian for Denver Flood. Can you please check? So far I'm noting I have an overage by Travelers of $1,007.19 after paying everyone for services to date. (TRAVELERS 000873)

John Napolitan wrote to Mr. Sicheri: We have the permit pulled for the plumbing project …. You wanted us to let you know when it was pulled and we were ready to begin. We will get started in the next few days with the demolition. Metropolitan Drain Cleaning, LLC. (TRAVELERS 000875, 000876)

**August 31, 2020:** Plumbing Permit from Denver County:
OWNER: DIEM INVESTMENTS, LLC
CONTRACTOR: KINGS PLUMBING, INC.
Valuation: $3,800.00
Permit Fee: $51.00
(TRAVELERS 000876)

**September 2, 2020:** Mr. Sicheri wrote to Mr. Napolitan: Thanks for the e-mail and permit copy. Will need the City inspector's red flag sheet to complete the code items on the estimate they list as needed. Send that once obtained. (TRAVELERS 000880)

Mr. Napolitan wrote to Mr. Diem: Travelers now wants us to pull a red flag inspection. I fear they are going to try to paperwork us to death. They will not grant a code upgrade without this document stating what the City wants done. (DIEM 001059)

Mr. Sicheri wrote to Mr. Napolitan: Again, thank you for the permit copy. Per our discussion, following up on the needed documentation. Per our discussions when we completed the onsite inspection, I need the City to inspect and provide documentation to show what is being code enforced to bring the plumbing and other items in the affected areas up to code. This is needed to confirm the items requested are enforced by the city. Without the documentation I cannot approve any code upgrade items for the affected areas as per the policy language. When obtained, I will update my estimate for the enforced code items. (DIEM 001061)

Mr. Sicheri wrote to Mr. Napolitan: Thank you for the e-mail and information. I have attached the insurance policy section below that stipulates the need for the city enforced code information requested for the affected areas. This is not my rule or any internal company policy. This is the insurance policy language and the insurance policy is clear that we have to have the city/county enforce ordinance or law …. It has to be enforced and required by the city/county. You will have to get the city/county to provide the red flag sheet documentation to support the enforced code items you were requesting. My manager and I were clear on this during our inspection, and without that, cannot approve the coverage …. Please supply the requested city/county inspection documentation so we can move the claim forward to completion. (DIEM 001064)

Mr. Diem wrote to Brian Richardson: Just a heads up, the adjuster has back tracked on his approval. I also am disappointed that he is choosing to ignore the section of my policy that covers upgrades. I'll get in touch with him when I return, however he approved the work in front of my plumber. He never asked for a "red tag" inspection which does not exist anyway. Short of hiring a public adjuster, any suggestions? (DIEM 001065)

Mr. Richardson wrote to Mr. Diem: Seems pretty straightforward to get that coverage to pay out it needs to be specifically required by the city which is what the coverage is for obviously. If it is then it should be very easy to get from the city, if it isn't then they are paying for it. He didn't deny the claim so there is nothing to appeal at this point which would be the first step. The work done requires a permit, right? Seems like that is the place where you would get the information you need to give them. Happy to help guide you through this quickly, but they are not in the wrong here. I don't ever tell anyone anything material in person, but the policy language supersedes anything he may have said verbally. Let me know what the city says about this and if there is some flexibility on Travelers part that needs to happen I can help with that. (DIEM 001065)

**September 3, 2020:** Mr. Diem replied to Mr. Richardson: Hi Brian, While it does sound straightforward, I spoke with the chief plumbing inspector for Denver and this really isn't something they do. They do not provide consultations. He may be able to accommodate the

request and have an inspector provide a summary if we call in inspection based upon permits however they will not site in individual codes. I'll try to find some middle ground to satisfy the adjuster. My big rub is he said to go ahead and begin work and he understood why the request were made. There was zero hint that he was going to go back on this. I fully understand what's written is what goes. I do find it annoying he has focused on damages only. 9A.3 says they will pay for undamaged to if it needs to be done, which it does. The framing replacement cannot be completed without removing existing plumbing where the framing wise. This is what's opening up the issue. We'll get there. Thanks for offering to help if necessary. We aren't there yet. (DIEM 001067)

Mr. Richardson wrote to Mr. Diem: Hey Jeff, Everyone has a boss and it sounds like he made an error in judgment and said too much. Me, I've learned not to do that several times in my 20 years! I too would suspect that this is all part of the permit and inspection process but I know you're trying to commit their funds to expensive upgrades before they're done. The first party that needs to be kept honest is the plumbing contractor, of course they want to do all the work they can so make certain that you know exactly what it is and what is the code or don't pay them for work they recommend that isn't required by code if this wasn't an insurance job you would just approve his bid and pay him at the end of the job. Likewise, you may have to just uncover the specific code requirement during the inspection process after the work is complete. The plumber should know where/how to find a written code that he is suggesting is needed. I'm not aware of any claim where they pay for the repairs to the plumbing, just the resulting damage caused by a covered peril. I'll read the section you were siting and see what other garblygook languages in there. An email from the chief plumbing inspector with the written code language and a statement that this red tag inspection is not customary should get you as far is needed to get confident they will pay. I can help when you get that info. (DIEM 001067)

**September 9, 2020:** Mr. Sicheri documented the following in the claim notes: Partial Denial of Claim: Supp Estimate Review: Received supplement item request for plumbing and plumbing related code items and electrical items as a result of the water loss... did not observe any electrical items damaged as electric was on and working at the time of inspection. Discussed with UM and PFT Hennessy and agree that plumbing system is not covered per the policy and code upgrade items requested for plumbing and electrical items therefore would not be covered. Also rot to structural wall not covered *** last estimate and payment completes covered PD and estimate and payment current- sending partial loss not covered letter to UM for review and approval.

Payment Breakdown

COV A RCV: $19,981.18
Depreciation: $1319.23
Deductible: $1000
Prior Payment: $17,661.95
Net: 0

Coverage D Payment: $1746.90. July and August
Prior Payment: $1746.90
Net: 0

Water MIT Payment: $5288.87
Rebuild: $8627.31
Asbestos Abatement: $1444.08
HVAC/Water Heater: $462.00
(TRAVELERS 000206)

Tyler Horan documented the following in the claim notes: Management Review: Reviewed and approve partial declination of coverage. (TRAVELERS 000207)

Mr. Sicheri documented the following in the claim notes: Left message for policyholder regarding the updated estimate and partial loss not covered letter and to call back when available. (TRAVELERS 000207)

Mr. Sicheri documented the following in the claim notes: Contacted by the policyholders agent, Rebecca and Bruce, stated that they have received numerous emails and phone calls from the policyholder regarding the claim. He has and needed answers on this claim and what the status was and decisions made.

Advised of the claim investigation and emails received today from the policyholder and explained the policy and PD review including the PFT Hennessey and you and him around and partial loss not covered and decided parts of policy, etc. for the partial loss not covered.

Agent attempted to twist conversation to say that we denied the claim because the policyholder is difficult and corrected agent multiple times that was not the statement and that the partial denial was based on policy review and the PD presented.

Agent argued and questioned the partial denial decision and I reiterated the request for documentation to the PH and the PH stated he could not get last documentation for the review - completed investigation once no other documentation could be provided, again cited the policy and PTF and UM reviews. Advised of the partial denial and reasons.
Agent again argued stating that the claim needed to be re-opened and UM needed to be involved.

Advised to agent again that UM Horan is involved and met with PH for inspection, as well as PFT, and approved the partial loss not covered and decisions and that unless there was new information to be presented, claim would not re-open at this time.

Agent again argued and stated he would be involved in all aspects of the claim moving forward and wanted UM contact information. Provided the information and no further at this time.

(TRAVELERS 000208)

Mr. Sicheri wrote to Mr. Diem: I am following up on our recent conversation about the damage to your property. As we discussed, I am providing a summary of your payment calculation and an explanation about the portion of your claim that is not covered …. As we discussed, after researching the claim, Travelers determined that your policy does not cover wear and tear, rot, mechanical breakdown, the plumbing system in which water escaped and faulty workmanship. The reasons for this determination are outlined below.

You presented a claim for plumbing and code items associated with plumbing and electrical. We inspected the damages with you and your plumber on 08/24/2020. Our research found a sewer line cracked due to wear and tear, faulty workmanship or mechanical breakdown which caused rot to a structural wall. Since wear and tear, rot, mechanical breakdown, the plumbing system in which water escaped and faulty workmanship are not covered, your policy does not provide coverage.

As a reference, I have provided the following section of your policy, (0DLC67-602864992-653-1), which explains that this type of loss is not covered …. (TRAVELERS 000237)

Mr. Sicheri wrote to Mr. Diem: I am following up on our recent conversation about your claim for loss of use arising from your interior water loss claim on 07/06/2020. Your coverage for loss of use applies when a covered loss causes your building to be uninhabitable. In such an event, we cover the loss of use incurred by you so that you can maintain your normal standard of living. Based on the scope of repairs, we estimated and agreed with you that the reasonable time frame to repair the damages will be 4 months, meaning you should be able to make use of your property on 11/06/2020. If there should be anything that changes this time period, contact me immediately. We have calculated your loss of use based on the documentation you submitted. If you have any questions, please contact me. (TRAVELERS 000596)

Mr. Diem wrote to Mr. Sicheri: I'm confused where you're coming from because John and I were under the impression that everything was copasetic, we were to pull permits, and begin the work. As you had said, it all made sense once you saw the layout of the project. The only items I recall you said you were going to go back and review were the HVAC reinstallation and also you may not be able to cover the 2x6 bottom plate, which is fine by me.

I want to do the best I can to keep this a smooth process, however John and his master plumber have not heard of this "Red Flag Sheet" before so I did some investigating. I have been in contact with Denver's Chief Plumbing Inspector, Frank Gonzalez who has never heard of this "Red Flag Sheet" before and called this entire situation highly unusual. The City of Denver's inspectors do not perform courtesy inspections to tell homeowners or plumbers what to fix, they are there to verify repairs listed on the permits are completed properly. Frank did say that he would consider sending out one of his inspectors on a slower day to look around however they will not cite any codes or provide a list. If Frank is amenable to this request, which again is

highly unusual, I'd like you to please call him to make the appointment so you can be on-site with your supervisor, John, and myself so that we can all hear directly what is said. Please let me know when you've connected with Frank and if he's willing to make an appointment, when it will be. (TRAVELERS 000895)

Mr. Diem wrote to Brian Richardson: Here is everything I sent for approval on 8/13. Given my background I am more than capable of writing my own work scope and I have access to the industry estimating tool, Xactimate. I have been fully transparent and justified all items with explanations within the estimate notes. I have never heard back on any approvals other than the denial I received today. As far as I know, nothing else has been considered. Thanks again and sorry for the email explosion. Just wanted to be sure you have all my information.
(DIEM. 001050)

Brian Richardson replied to Mr. Diem: I've read through all of this and spoke to Justin. He was very clear that they are not paying for certain items due to wear and tear and since the code upgrades relate to property they don't cover they are not paying for those items either.

The confusion seems to be why they are asking you to get a "red tag" inspection which is also claimed to be done every day if they aren't going to pay for it anyway. According to Justin he was trying to get as much information as possible to "try and find coverage "but had never committed to paying for the repairs in question.

From my perspective, it is dangerous ground to press them for more coverage if the original cause of loss what is wear and tear of old plumbing. I would hate to open up a can of worms and have them react to being cornered by sticking to the letter of the policy and taking back other monies not yet paid out. So my question to you are... Have you received and deposited all the monies they say they owe at this point? And also are you sure you want me to dig in more and ask for an appeal? I'm certain they aren't going to pay for upgrades just because your plumber says they're required by code, the requirement needs to be clearly stated in writing from the city. I also know they aren't going to pay for the pipes unless the damage to the pipe was caused by a covered peril, period. So if the only code upgrades that are needed are upgrades to the pipe they aren't covering then they aren't going to cover the work that also needs to be done to make the repair. No coverage extensions ever apply if the root cause of the loss is not covered. Best I'm going to get here is a much more polite explanation of why they mis-communicated to you by telling you to get inspections done for work they weren't going to cover. Happy to get that so I can make sure they are being as courteous and thorough as possible. (DIEM 001050-1051)

Mr. Diem replied to Mr. Richardson: Hi Brian, thanks for making such quick work of this. Please see below in red: Jeff,

I've read through all of this and spoke to Justin. He was very clear that they are not paying for certain items due to wear and tear and since the code upgrades relate to property they don't cover they are not paying for those items either. Please explain further, this doesn't align with

what he was saying. He said everything was "reasonable" and "makes sense." Are you saying the pipes aren't covered so therefore they won't pay?

The confusion seems to be why they are asking you to get a "red tag" inspection which is also claimed to be done every day if they aren't going to pay for it anyway. According to Justin he was trying to get as much information as possible to "try and find coverage "but had never committed to paying for the repairs in question. Why wouldn't he at least meet with the Chief Plumbing inspector anyway? If he wanted a list, and could potentially get it in order to extend coverage that seems like a cop out to me.

I don't disagree with the emotional aspect of feeling cornered however if the policy is the policy, why wouldn't they still be bound to it. From my perspective, it is dangerous ground to press them for more coverage if the original cause of loss what is wear and tear of old plumbing. I would hate to open up a canna worms and have them react to being cornered by sticking to the letter of the policy and taking back other monies not yet paid out. I don't disagree with the emotional aspect of feeling cornered however if the policy is the policy, why wouldn't they still be bound to it.

So my question to you are... Have you received and deposited all the monies they say they owe at this point? I have deposited what has been mailed so far. Spreadsheet attached. No, they have not reviewed nor approved any or a portion of the repair scope I supplied or reviewed the other bids for electrical, HVAC, and duct cleaning (which would relate to the mold loss) I'm wondering why they have not replied back yet on that I did receive slightly less than $10k last week, $950 of which was for loss of use. There were also discrepancies between what had been paid prior and what was invoiced from 3rd party approved vendors. I sent Justin an email with that information and a spreadsheet I've tracked this information with and
he never replied, only a check was sent. I'm unsure if this is for the draw or for the other items owed

And also are you sure you want me to dig in more and ask for an appeal? I'm certain they aren't going to pay for upgrades just because your plumber says they're required by code, the requirement needs to be clearly stated in writing from the city. If the city won't provide this, I do have a copy of the 2018 IRC with applicable does that we won't meet. I am happy to photocopy and send them to prove we're not making this up. Denver just moved to the 2018 code in July.

I also know they aren't going to pay for the pipes unless the damage to the pipe was caused by a covered peril, period. Please explain to me 9. A3 please because to me, it seems they would cover it

So if the only code upgrades that are needed or upgrades to the pipe they aren't covering them they aren't going to cover the work that also needs to be done to make the repair. I don't disagree the existing pipes are old, however to me this is a triggering event. The wall that is covered cannot be reframed without removing the existing pipes. By removing the existing pipes, we'll trigger the need by Denver to upgrade the existing plumbing to meet codes. I can't close out the permit without doing that. I feel like I'm now between a rock and a hard place because they want a list from the city that may not provide it however, if I get the pipes replaced at just the wall area and call for an inspection, it's the license of the plumber. Heck we haven't even touched electrical yet

No coverage extensions ever apply if the root cause of the loss is not covered. That I agree with. So, are you telling me we're flirting with the fact that this possibly should not have been

covered in the first place, and that ship has sailed? To me, the bathroom and kitchen were affected by a loss they've said was covered. I cannot fulfill permits to get the affected areas back to their pre-loss conditions without meeting codes. While the pipes were not directly affected by the loss, a good amount of property plumbing will need to be removed and replaced in order to reframe the bathroom. Thereby we cannot complete the repairs to-code without replacing the rest of them. That's where I'm not understanding why 9. A3 wouldn't be applicable.

Best I'm going to get here is a much more polite explanation of why they miscommunicated to you by telling you to get inspections done for work they weren't going to cover. Happy to get that so I can make sure they are being as courteous and thorough in there! As possible.

That's okay at this point. I don't think Justin was being intentionally disrespectful however he never should have told me to proceed and get permits. His sending of documents without explanation is annoying and confusing.. I recognize he tried to call however in a customer service situation, I would think it wouldn't be smart to send a potentially volatile document prior to connecting with the homeowner first. That's just my opinion, and I know Traveler's has strict procedures and timelines which he may have been following. I know this is nothing personal and is simply everyday business for them, it just sucks when it's your property!
(DIEM 001052)

Mr. Diem wrote to Brian Richardson: Hi Brian, Following up on our conversation with a partial claim denial below. Basic timeline is as follows:

> 8/13/20- Sent code upgrade bids and HVAC reinstallation price to previous adjuster Jason Mostek, was uploaded for review.
> 8/18/20-Jason re-assigned to local adjuster Justin Sicheri
> 8/24/20-met on site with Jason, his manager (I believe? didn't get his card), and my plumber John. The adjusters initially believed I was trying to replumb the entire house. We explained to the adjusters that the plumbing that exists and needs to be replaced DOES service the entire house and that Denver would not allow us to patch things in due to age. Plumber John explained everything including how galvanized pipes fail due to rust which the adjuster was unaware of. The adjuster said they may not cover pipes that are undamaged which I pointed out that we cannot replace the framing without replacing the plumbing since it's all tied together. The adjusters said this all made sense and it was okay to proceed pulling permits for this and electrical. I asked about if the HVAC reinstallation was approved and Justin said he had not reviewed it, but would check. He said the only thing that may not be covered was a rotten 2x6 on the floor which I said was fine. Justin did not ever mention getting any inspections beforehand and said to proceed.
> 9/2/20-Plumber John sends permit copy and says ready to begin
> 9/2/20-Justin says we need a City inspection first to tell what is being code enforced
> 9/2/20-John asks what this is and Justin replies it's a "Red Flag Sheet" to list code items required
> 9/2/20-Justin emails me citing I have attached the insurance policy section below that stipulates the need for the City enforced code information requested for the affected areas. This is not my rule or any internal company policy. This is the insurance policy

language and the insurance policy is clear that we have to have the City/County enforced ordinance or law which requires or regulates in order to afford the ordinance and law coverage.

It has to be enforced and required by the City/County. You will have to get the City/County to provide the red flag sheet/documentation to support the enforced code items your requesting.

My manager and I were clear on this during our inspection and without that, cannot approve the coverage our insured is requesting.

9. Ordinance or Law. a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:
(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

Please supply the requested City/County inspection documentation so we can move the claim forward to completion.

Thank you!

Please note he neglected to input 9a3-Ordinance or Law.
a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:
(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;
(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or
(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure

necessary to complete the remodeling,
repair or replacement of that part of the
covered building or other structure
damaged by a Peril Insured Against.
b. You may use all or part of this ordinance or
law coverage to pay for the increased costs
you incur to remove debris resulting from the
construction, demolition, remodeling,
renovation, repair or replacement of property
as stated in 9.a.
c. We do not cover:
(1) Stigma damage or any actual or
perceived reduction or diminution in
value to any covered building or other
11. structure due to the requirements of any
ordinance or law; or
(2) The costs to comply with any ordinance
or law which requires an "insured" or
others to test for, monitor, clean up,
remove, contain, treat, detoxify or
neutralize, or in any way respond to, or
assess the effects of, "pollutants" in or on
any covered building or other structure.
d. The most we will pay for any increased costs
to comply with any ordinance or law that
becomes effective after the date of loss is
$5,000.

10. Inflation Coverage. We may adjust the limits

Going along with the request for this "Red Flag Sheet" which does not exist, I contacted the lead plumbing inspector for city of Denver, Frank Gonzelez. He said this is a highly unusual request and that the city does not usually perform this type of inspection. The plumber has never heard of this either. Frank did say that he may consider this type of inspection on a slow day however his inspectors will NOT cite any specific codes. He also didn't indicate if it would be a written report.

9/9/20-emailed Justin saying I wanted to play ball and that this was unusual but if he wanted this inspection he could call Frank and make an inspection appointment. I requested we all be there, including his supervisor, so we can all hear what the inspector says. I also provided Frank's direct cell #.

9/9/20-without any explanation I received the partial denial below. My big question at this point is, if I, the insured, tried to comply with his request for a subsequent report an inspection,

which is not normal, why would there be no conversation and an immediate denial? I have emails to support every item above and then some.

Thanks Brian for your support! (DIEM 001070-2072)

**September 10, 2020:** Brian Richardson wrote to Jeff Diem: Hey Jeff, It is hard to explain, but since the plumbing itself was not damaged by a covered peril it is not covered nor are any of the other coverages such as code upgrade going to apply to the plumbing repairs. If you had to replace treated wood or asbestos drywall to repair the damage caused by the water leak that would be covered. If it would have led to an electrical fire that then damaged the plumbing that would also be covered but since the damage to the pipes is wear and tear it is not covered.

I've thought about it and the damages caused by the water leak are covered no question, that is why they paid those out.

I really don't think we're going to get anywhere else on this but I'm going to hit send on my draft email anyway. So you are saying that the framing was in fact damaged by the water leak and it is not possible to rebuild that portion without removing the pipes? If that is the case I could see them paying to remove them but not replace them. (DIEM 001052-1053)

**September 11, 2020:** Mr. Diem wrote to Mr. Sicheri/Tyler Horan: Hi Justin, Can you please update me on the status approvals for:
1. The updated reconstruction estimate sent 8/13
2. Electrical estimate sent 8/13
3. HVAC reinstallation sent 8/13. Finally, what level of approval authority do you have?
(TRAVELERS 000889-890)

Mr. Sicheri wrote to Mr. Diem: Thank you for the e-mail and inquiry. I have attached a copy of the estimate completed on 08/28/20 for your review which included the supplement items sent in on 08/13/20. Payment was issued in accordance with this estimate for items 1 and 3. Item 2 was not included in the estimate as it was not directly damaged from the water loss and would not be covered under the law and ordinance coverage. Your inquiry of my authority I cannot answer due to internal company processes and operations not being disclosed and is not part of the claims process. However, the handling of your claim is within my authority. (TRAVELERS 001073)

Mr. Sicheri wrote to Mr. Diem: Thank you for the e-mail and information. The documentation was received for 08/13/20 and was reviewed and additional supplement estimate was completed on 08/28/20 with additional payment for $8,453.89 issued to you. Additional estimate and payment was issued for the HVAC and reconstruction. The estimate did not include the plumbing and electrical. You can supply additional information for the duct cleaning to review and show how the water loss affected and damaged the ducting requiring it to be cleaned. (TRAVELERS 001532)

Mr. Diem wrote to Mr. Sicheri and Tyler Horan: Thank you for your reply. I'm noticing you've not reviewed the estimate I submitted for reconstruction to bring the affected areas back to their pre-loss condition. Electrical and plumbing aside, I'm curious why this has not been reviewed? (TRAVELERS 0009910)

Mr. Sicheri wrote to Mr. Diem: Thank you for the e-mail and inquiry. I am confused as to your inquiry as the review for the 08/13/20 items was completed and additional payment was issued on 08/28/20 for $8,453.89. To date, a total of $19,408.85 has been issued for building damages and lost rental income. If there is additional supplements you would like me to review, please send those and I will complete the additional review. (TRAVELERS 000906)

Mr. Diem wrote to Justin Sicheri/Tyler Horan: I've submitted the bids for electrical, plumbing, HVAC, duct cleaning and a reconstruction estimate to Jason Mostek on 08/13. Perhaps you didn't receive everything. I'll forward you the e-mail I sent. He did confirm receipt. (TRAVELERS 000909-910)

Mr. Diem wrote to Mr. Sicheri: Please see the attached that I'd sent over to Jason back on 08/13. Let me know after you've reviewed so we can discuss the differences between our two reconstruction estimates. Photos are attached with notes, too. (TRAVELERS 000917)

Mr. Sicheri wrote to Mr. Diem: Thank you for the e-mail and inquiry. E-mail over any documents and will review for possible supplemental items missed. (TRAVELERS 000913)

Mr. Diem wrote to Mr. Sicheri: Thanks, I'll get the docs over to you from 8/13. I reviewed your loss scope and it does not align with mine that I sent. Were you able to review what I sent? If so, let's set up a call for next week to discuss once you've had a chance to review the docs I'm sending over. If not, please review and let's talk next week so I can explain why each line item is included. (TRAVELERS 000918)

Mr. Diem wrote to Tyler Justin: Please see attached that I'd sent over to Jason back on 08/13. Let me know after you've reviewed so we can discuss differences between our two reconstruction estimates. Photos are attached with notes too.

**September 14, 2020:** Taylor Grant of Bellator Claims wrote to Mr. Sicheri: Please find the attached letter of representation for Jeff Diem. Claim Number: IHN8570
Would you please verify receipt of this document within 24 hours?
Please email a Certified Copy of the insurance policy which was in place at the time on the Date of Loss: 07/06/2020. Any and all site inspections of the property by the claims agent or any parties that are associated with the insurer shall not access the property without first making an approved, scheduled, appointment with our office. Have the adjuster assigned to the claim contact: Taylor Grant (TRAVELERS 001595)

**September 16, 2020:** Brian Richardson wrote to Mr. Diem: Hey Jeff, Never heard back on this email. If you know they aren't going to pay for the pipes themselves then what do you want me

to ask of the claims dept? I never did send my email to them because I don't have a clear understanding of what I'm asking for. (DIEM 001053)

Mr. Diem replied to Mr. Richardson: Sorry, got distracted. Thanks for following up. Plumbing aside, it seems Justin never reviewed the scope of work I provided to his predecessor on 8/13. The scope Traveler's provided lacks detail and is missing line items necessary to return the affected areas to their pre-loss condition. At Justin's request, I resent it to him on Friday and am waiting to hear back. For now, let's hold off on your email and see what happens when I hear back from him. Thanks again for the follow up. (DIEM 001053)

**September 21, 2020:** Mr. Diem wrote to Mr. Sicheri: On 9/11 I sent over the files initially sent 8/13 for review. When is a good day to discuss the scope of work I provided? Plumbing aside, the scope of work provided by Traveler's is insufficient and lacking line items necessary to return the property to its pre-loss condition. Also, my upstairs tenant moved out 9/20. The property is now fully vacant. The previous Lease which I submitted several months back is at $1,795/mth. It is currently listed for Lease at $1,895/mth. https://www.zillow.com/homedetails/4565-Elm-Ct-Denver-CO-80211/13296748_zpid/ Please be aware that it is illegal for me to rent either unit at the property right, and the property is deemed "uninhabitable" as it violates the Colorado Warranty of Habitability Act Statute 38-12-505 requiring heat. As we've discussed before, I cannot reinstall the furnaces until we get the wall reframed, re-plumbed, and re-drywalled. There was drywall on both sides of the wall that was removed. I cannot begin any of the repairs until we agree on a scope of work and cost. Given that the heating season is approaching, I will be winterizing the property to prevent freeze damage and will submit the invoice for reimbursement. I have attached a copy of the statute for your files. The document is large, and the applicable statute is on page 94. I look forward to speaking with you regarding the scope of work soon. (TRAVELERS 000944)

**September 22, 2020:** Mr. Sicheri documented the following in the claim notes: Damage/Verification: Supplemental estimate payment note: Received emails from policyholder with supplemental estimate request items and loss of rental income request for upstairs tenant that moved out. Saved to file docs. Agree with supplement estimate items for duct cleaning only at this time as HVAC and ducts affected by the cat 3 water per invoice. Did not agree with electrical supplemental estimate as already denied and not damaged by the water loss, already issued payment and accounted for HVAC reinstallation and rebuild, repair items on prior estimate. Discussed claim with UM and I agree that upstairs unit lease ending was not affected by water loss and no loss of rental income would be afforded for that unit. Agree that only lower unit would receive four months loss of rental income as it was affected by water loss- 2 months Lost rental income already issued to PH. Drafting ALE letter for UM approval and to send to PH referencing same. Also agreed with UM as the PH is refusing to start or complete work due to dispute, would not be responsible for winterizing home and any other expenses incurred by the PH lack of completing the work.

Payment Breakdown

COV A RCV: $21,349.43
Depreciation: $1319.23
Deductible: $1000
Prior Payment: $17,661.95
Net: $1368.25

Coverage D Payment: $1746.90. July and August
Prior Payment: $1746.90
Net: 0

Water MIT Payment: $5288.87
Rebuild: $8627.31
Asbestos Abatement: $1444.08
HVAC/Water Heater: $5989.25

(TRAVELERS 000208-209)

Tyler Horan documented the following in the claim notes: Management Review: Reviewed for supplemental authority. In agreement with revisions as outlined by CP as well as additional two months loss of rent for total of four months per XM8 and permitting required. In agreement with additional living expense letter to be issued to insured. Insured's email on file indicates he is opting to not move forward with repairs at their option due to a disagreement on scope of repairs and items not covered under insurance policy. Approval: Building: RCV $21,349.43. Payment $1368.25. ALE – LOR: RCV $1746.90. Payment $0 (TRAVELERS 000209)

Travelers issued payment to Mr. Diem in the amount of **$1,368.25** (TRAVELERS 000227)

Mr. Sicheri wrote to Mr. Diem: Dear Mr. Diem, Thank you for the emails and documentation.

Attached is our updated estimate and an additional payment has been requested to be mailed to you.

Also attached is a loss of use letter outlining the set dates being authorized for the final time frame allowed for the lower unit lost rental income. The time frame is based on the standard time needed to mitigate and make repairs for such a loss, which is 3 months, and I added an additional 1 month.

Regarding the damage supplement items you submitted, all the approved rebuild/repair items have been accounted for on the prior estimate and prior payment was issued and cashed by you. This estimate has added the cleaning of the ductwork. The other items including the electrical, plumbing, and structural framework have already been addressed in

our partial loss not covered letter. Please note, any delay you choose to incur in moving forward with the repairs or mitigating of your damages is your decision and Travelers is not responsible or would owe for winterizing the property.

Regarding the loss of rental income request and information for the upstairs unit. We would not reimburse for this unit as it was not affected directly by the water loss. Please refer to your policy conditions regarding lost rental income noted below:

PROPERTY COVERAGE SECTION
PROPERTY COVERAGE D – LOSS OF USE

When the dwelling on the "residence premises" shown in the Declarations is a one-family, owner occupied dwelling used as a primary residence and this Special Provisions – Colorado is used with form HQ-P02 or HQ-P03, the introductory paragraph and paragraphs 1. Additional Living Expense and 2. Fair Rental Value under PROPERTY COVERAGE D – LOSS OF USE are replaced by the following:
…
2. Fair Rental Value. If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.

Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held for rental or rented to others for a term of 6 consecutive months or more by the same roomer, boarder, tenant or other occupant who provides compensation to an "insured".

Payment will be for the shortest time required to repair or replace such premises, but for no more than the time period shown in the Declarations as the Limit under Coverage D – Loss of Use.

Written proof that part of the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 12 months prior to the date of loss is required.

I hope this answers any questions you may have and please submit any further information or documentation for further review as needed. (TRAVELERS 001555-1556)

Mr. Sicheri wrote to Mr. Diem: I am following up on our recent conversation about your claim for loss of use arising from your interior water loss claim on 07/06/2020.

Your coverage for loss of use applies when a covered loss causes your building to be uninhabitable. In such an event, we cover the loss of use incurred by you so that you can maintain your normal standard of living. Based on the scope of repairs, we estimated and agreed with you that the reasonable time frame to repair the damages will be 4 months,

meaning you should be able to make use of your property on 11/06/2020. If there should be anything that changes this time period, contact me immediately.

We have calculated your loss of use based on the documentation you submitted.
If you have any questions, please contact me …. (TRAVELERS 001537)

Mr. Diem wrote to Brian Richardson: My upstairs tenant moved out and I cannot re rent the unit until the furnace is replaced. This is a violation of the Colorado Warranty of Habitability Act. I've sent this documentation to the adjuster and he replied below. The upper unit by proxy is affected by this claim and while it is not damaged, I cannot rent it. His quote from the policy is below. What's not making sense to me is we've always known this property is not a single family unit. Can you please shed some light on what's going on? Also we NEVER had any repair timeline discussed nor agreed upon. His letter is materially incorrect as we did not have an agreement, plus he was out of town last week. Traveler's lack of response to my 8/13 submission and subsequent non-reply is not a reason to hold back loss of use. I've always followed up in a timely manner how've this has been delayed and delayed on their end. (TRAVELERS 001554)

Mr. Richardson replied to Mr. Diem: I will look into this and do what I can, but I want to be clear. The policy is going to pay what it is going to pay, do not delay any further repairs waiting for them to agree to pay for them. You have to get this fixed and get it rented again, they are going to close it every time they make a decision and issue a payment. You don't want to fight over Loss of Rents coverage when they've officially notified you of what they are willing to pay. Let me be clear, they are not going to pay for a time period where you are trying to change their mind, so the work needs to get done asap. I already know their perspective and what they will tell me when I contact the adjuster and his manager who is aware of all the events/circumstances. You have the best coverage available and Travelers usually doesn't skimp at claims, but surely there is to be some out of pocket. I'll help any way I can but so far I'm not seeing anything that is going to move the needle. (TRAVELERS 001554)

Mr. Diem replied to Mr. Richardson: I fully understand where you're coming from and I've aligned vendors to begin the project and get it scheduled. It is perplexing to me that I have asked 3x for the adjuster to have a call with me to discuss my provided scope of work vs. theirs. I have photographs of how this property looked and building components that were in place that I am not being compensated for. This is not including electrical or plumbing. I provided them a well justified and documented estimate and they will not schedule a call to discuss. In the restoration industry it is common for reconstruction not to commence until a scope of work is agreed upon. I would appreciate finding out why they are unwilling to pay for the loss of use of the upstairs unit and quoting a section that says personal residence when it was insured as a non-owner occupied duplex. Justin has a copy of the Warranty of Habitability Act. Bottom line is that while I want this to go quickly, Justin is refusing to have a reasonable discussion with me in which I can work with him and justify my position with photographs. It makes no sense. This would go quicker if he'd just schedule a call with me as I've requested on three different occasions. I'm not saying this is bad coverage nor am I disagreeing with the out-of-pocket

however it's disappointing Justin is unwilling to have a simple phone call where we can review my scope line by line which is common practice. I know because I've done it many times. (TRAVELERS 001553)

**September 23, 2020:** Brian Richardson wrote to Mr. Sicheri: Justin, I've been going around and around with this client. I need you to have a discussion with him so you can specifically address his concerns so we can get this over with and keep a happy customer. Please call Jeff or otherwise connect with him. Let me know if you have any questions. (TRAVELERS 001553)

Mr. Sicheri documented the following in the claim notes: Contacted the policyholder, Identified myself and the policyholder stated he would like to review the claim an estimate and did not have time now. Requested to set up a date and time and agreed to Friday at 10 AM. Advised I would contact the policyholder back on Friday to review. Policyholder agreed and understood and no further at this time. (TRAVELERS 000210)

**September 25, 2020:** Mr. Sicheri documented the following in the claim notes: Contacted the policyholder with UM Horan ref to the claim and the specific rebuild line items. Policyholder wanted review and added policyholder only wanted to review the rebuild items and did not discuss the additional living expense, plumbing, electrical, or HVAC as they were not covered or already paid. Policyholder did question the structural framing and advised we had discussed this item and would not be covered due to rot and would not cover as discussed at the inspection. Discussed specific line items and advised I would review and update estimate with any possible items that I could agree with and send updated estimate an issue any additional payment. Policyholder understood and agreed and no further at this time. (TRAVELERS 000211)

Mr. Sicheri documented the following in the claim notes: Received emails and discussed claim line items with policyholder. I'll email save to file document. Agree with request items for final cleaning, additional pickup truck disposal, temporary toilet, some hallway items, cleaning of carpet, some bathroom and kitchen items including masking and painting, DKr of items and flex tubing for fan exhaust. Did not agree with replacing of medicine cabinets as not damaged in water loss, painting of door slabs and window/door frames as not damaged in loss and painting of kitchen shelf as not damaged in loss. Payment Breakdown:
COV A RCV: $24,594.65
Depreciation: $2067.57
Deductible: $1000
Prior Payment: $19,030.20
Net: $2496.88

Coverage D Payment: $1746.90. July and August
Prior Payment: $1746.90
Net: 0

Water MIT Payment: $5288.87

Rebuild: $11,872.53
Asbestos Abatement: $1444.08
HVAC/Water Heater: $5989.25

(TRAVELERS 000211)

Travelers issued a supplemental payment to Mr. Diem in the amount of **$2,496.88.** (TRAVELERS 000226)

Mr. Sicheri wrote to Mr. Richardson: Just wanted to keep you in the loop that I had a conference call with the insured today at 10 am, Mr. Diem. We reviewed and discussed specific repair/rebuild line items only on the estimate that I will take a look at see if any allowances can be made and should have something updated soon. I will cc you in on the email with the updated estimate once completed. (TRAVELERS 0011573)

**October 2, 2020:** Mr. Diem wrote to Mr. Sicheri: Good morning Justin, I wanted to submit a request for Loss of Use for the basement, $950 for September please. In addition, work has been started and cabinets ordered. In addition, I did find the two medicine cabinets we discussed. They got hidden under the bathtub somehow. They were not discarded, so a reset is just fine. I apologize for the confusion. (TRAVELERS 000213)

Mr. Sicheri documented the following in the claim notes: Loss of Use Payment Note: Received email from policyholder requesting third loss of use payment for downstairs unit. Email saved to file docs. Agree with third loss of use payment release. Payment Breakdown:
COV A RCV: $24,594.65
Depreciation: $2067.57
Deductible: $1000
Prior Payment: $19,030.20
Net: $2496.88

Coverage D Payment: $2696.98 July and August and September
Prior Payment: $1746.90
Net: $950

Water MIT Payment: $5288.87
Rebuild: $11,872.53
Asbestos Abatement: $1444.08
HVAC/Water Heater: $5989.25

(TRAVELERS 000212)

Tyler Horan documented the following in the claim notes: Management Review: Reviewed and approved additional living expense. Loss of rents for September as outlined by CP. SOL and ALE worksheet uploaded to file per guidelines. Approved payment for $950. (TRAVELERS 000213)

Travelers issued payment to Mr. Diem in the amount of **$950.00.** (TRAVELERS 000225)

STATEMENT OF LOSS
Date/Time: 10/02/2020
Prepared by: Justin Sicheri
Type of Loss: Water

COVERAGE A BUILDING: AMOUNT OF INSURANCE: $197,000
TOTAL DAMAGES: $24,594.65
RECOVERABLE DEPRECIATION: $2067.57
ACV CLAIM: $25,223.98

LESS CLAIM PAYMENT - 1ST PAYMENT BUILDING: $7031.13
LESS CLAIM PAYMENT - 1ST PAYMENT ALE: $796.90
LESS CLAIM PAYMENT - 2ND PAYMENT BUILDING: $1976.74
LESS CLAIM PAYMENT - 3RD PAYMENT BUILDING: $200.19

LESS CLAIM PAYMENT - 2ND PAYMENT ALE: $950
LESS CLAIM PAYMENT - 4TH PAYMENT BUILDING: $8453.89
LESS CLAIM PAYMENT - 5TH PAYMENT BUILDING: $1368.25
LESS CLAIM PAYMENT - 6TH PAYMENT BUILDING: $2496.88
LESS CLAIM PAYMENT - 3RD PAYMENT ALE: $950

TOTAL PRIOR PAYMENTS: $24,223.98

LESS DEDUCTIBLE: $1000

TOTAL PAYMENTS DUE: 0

(BATES TRAVELERS 000232-233)
ADDITIONAL LIVING EXPENSE WORKSHEET
FIRM: TRAVELERS
PREPARED BY:
DATE: 10/02/2020
RENTAL OF DWELLING OR APT. OWED: $2696.90
PRIOR PAYMENTS: $1613, $2500, $2500, $2500
(TRAVELERS 000678-686)

**October 2, 2020:** Mr. Diem wrote to Bellator Claims: As requested I've attached a timeline of discussions with my adjusters and added the e-mails at the bottom of the page. I've also attached the certified policy I received and other documentation to support. My biggest issues are: (1) Claim denial of Law and Ordinance upgrades that are necessary and appear to be approved by section 9A3. We had an in person meeting for approvals and he said get permits.

He then asked for additional information from the city which is an unusual request. I got him the contact info for the Chief Inspector and then got a denial letter. (2) Refusal to pay for Loss of Use in the upstairs unit. This is a duplex and is insured as such. The state categorizes this property as uninhabitable based on the Colorado Warrant of Habitability Act. Adjuster says they are only responsible for the basement as the “Residence Premises.” The Policy lists the “Residence Premises” as the upstairs address anyway. My upstairs tenants moved out 09/20 and their lease is attached. Looking forward to working with you. (BELLATOR 001483)

**October 14, 2020:** Mr. Diem wrote to Bellator Claims: Attached are the photos you requested of 4565/4563 (lower unit) Elm Ct. I’m looking forward to working with you. (BELLATOR 001399)

**October 16, 2020:** CORRESPONDENCE - NOTICE OF REPRESENTATION : Please be advised that the Named Insured has contracted with Bellator Claims Resolution, LLC to represent the Named Insured in the documentation of the loss and/or claim and has been assigned in interest in the same. You are hereby authorized and directed to name Bellator Claims Resolution, LLC as an additional payee on all drafts or checks issued by you. Furthermore you are advised to communicate and provide all documentation including any payments to Bellator Claims Resolution, LLC IN WITNESS WHEREOF The undersigned has executed this Contract as the date specified below:

Insured’s Name (Print): Jeff Diem
Insured’s Name (Signature): ________________________
Date: 10/16/202

Per policy provisions, please be advised that the insured intends on making a claim for any and all withheld recoverable depreciation that may be applied. We also ask that any future correspondence be directed to us and not the insured.

***Please provide Bellator Claims Resolution, LLC a Certified Copy of the policy that was in effect on the date of loss listed above. Please provide via email. As per state statute this must be provided in 30 days or less. (TRAVELERS 001596-1596)

BELLATOR CLAIMS RESOLUTION, LLC – PUBLIC ADJUSTER CONTRACT: 25% OF NEW MONEY. (BELLATOR 001088)

**October 19, 2020:** Mr. Sicheri documented the following in the claim notes: Request for certified copy of the policy. (TRAVELERS 000688)

Bellator Claims wrote to Mr. Sicheri: Please find the attached letter of representation for Jeff Diem. …. Please e-mail a Certified Copy of the insurance policy which was in place at the time on the date of loss …. (BELLATOR 001450)

Justin Sicheri replied: Thank you for the e-mail and documentation. Your e-mail and letter has been received and certified copy of policy has been requested. …. (BELLATOR 001451)

**October 20, 2020:** Mr. Diem wrote to Bellator Claims: Just after we spoke I met with the electrician after he'd done his assessment. The existing electrical will need to be redone and due to the house being a duplex it gets even worse that circuits are shared and tied together. The electrician took photos and will be submitting recommendations on how to bring it up to Denver code which is very strict. Between this and plumbing I'll max the code upgrade easily. What's really going to piss off Travelers is that it will require a 100% gut of upstairs and downstairs to access the wiring. There are insufficient outlets, wrong placement, incorrect wiring, incorrect panels. Since they are all tied together it has to be done as one. … On the plus side, the claim got bigger for you/us! (BELLATOR 001401)

Justin Sicheri wrote to Bellator Claims: Please see the attached certified policy requested. (BELLATOR 001453)

**October 22, 2020:** Mr. Sicheri documented the following in the claim notes: Received a voicemail from policyholder. PA Taylor Grant at 970... ref to the claim and to call back when available... Contacted the policyholder PA Taylor Grant back, identified myself and the claim and the PA stated that he is working on the Jeff Diem claim and wanted more information. Rep advised he wanted to reinspect the claim location and advised we could absolutely do that and that representative advised he had a busy schedule with training and jury duty and advised that it would be next week and would call back to schedule. Agreed. Representative also requested estimate and documentation for the client. Agreed and would email the latest estimate, partial loss not covered, and ALE letters to the PA. PA agreed and thanks for the assistance and no further at this time. (TRAVELERS 000214)

**October 26, 2020:** Mr. Sicheri documented the following in the claim notes: Contacted back by the PA Taylor Grant and the rep advised that he was reviewing the code requirements for plumbing and electrical that were initially approved and reviewed the loss and the policy conditions and claim fax and handling and explained loss not covered information. PA questioned the letter sent and stated he did not see where the information on the law and ordinance what is covered and what this coverage is bound by. Advised that the water or steam escape section covered that and when PA questioned why the law and ordinance section was not covered in the letter and questioned if that was sent, advised I would have to review all the letters sent and would send over any additional that were sent. PA advised once he had that or more information, would determine that he contacts the policyholder and moving the claim forward. Understood and no further at this time. (TRAVELERS 000214)

Mr. Sicheri wrote to the public adjuster: Mr. Grant, Following up on our conversation this morning. This is the applicable coverage section that is being discussed and concerns the plumbing and electrical code items in question that the insured was discussed prior via phone and email.

PROPERTY – ADDITIONAL COVERAGES
Unless otherwise stated, the following coverages are additional insurance and are subject to the applicable policy deductible.
…
9. Ordinance or Law.
a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for
the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

Let me know of any questions or further assistance needed. (TRAVELERS 001708-1709)

**October 27, 2020:** The public adjuster wrote to Mr. Diem: Thanks for choosing us to help you with your claim. We received the information we requested from the adjuster and are reviewing it now. We will be coordinating with him to schedule an inspection at the property.

We'll give you Claims Updates every other week on Tuesday or communicate with you more often as needed. You may hear from our Claims Manager Kim Hardy with requests or updates as well. At this time, the adjuster is stating they don't owe for code requirements because that was not directly affected by the loss. I'm digging further into the policy to determine how to best move forward. (DIEM 001100)

Mr. Diem replied to the public adjuster: Thanks for the update. Justin's verbiage that he included: (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against. While the wall itself may not have been covered due to rot, fine. However it still needed to be removed due to a covered claim in order to remove the mold which WAS covered. In my opinion, the plumbing and electrical therefore are covered because there was no way around removing the wall in order to remove the mold. Just my $0.02. Let me know of any questions or further assistance needed. (DIEM 001100-1101)

**November 10, 2020:** Bellator Claims wrote to Mr. Diem: Please give me a call this afternoon … so we can discuss. (BELLATOR 001377)

**November 11, 2020:** Mr. Diem wrote to the public adjuster: Hi Taylor, Thanks for your time today. The applicable section is 38–2–505 on Page 94. I highlighted it and sent it to Justin on

9/21. A copy of that email is in the timeline of events I sent to you. I did attach the CO WH document for you too. Let me know when you want to discuss doing onsite inspections for you. (DIEM 001102)

Mr. Diem wrote to the public adjuster: Sounds good. The lock box is on the basement door, 3194. Big keys are for the entry door. The smaller key is for the upstairs door to the main floor. The door to the upstairs is likely unlocked and accessible from an internal staircase off the mechanical room. I also had another thought about why the electrical needs to be replaced... Similarly to the plumbing, electrical is run through framing. Traveler's approved removing the framing during the mitigation phase so in order to replace the wiring, new wires would be required in order to feed them through the new holes drilled in the framing. In Denver, whenever new wire is pulled you're required to pull permits. This would once again trigger a lot of new electrical work being required throughout the home. When you go through the property some old wiring has already been removed where the new framing was installed. The electrician removed it just prior to realizing just how large of a scope would be required. The ones in the new framing area have been removed as are the ones in the ceiling that run lengthwise in the utility room. The 220v on the floor is still in place however needs to be properly run. It cannot be in PVC pipe as a conduit nor can wires be embedded in concrete. I do have a 2018 IRC code book in my office so I can arm you well with code citations too. (DIEM 001103)

**November 16, 2020:** Mr. Diem wrote to Mr. Sicheri: Can you please send the lost rent for this claim for October? (TRAVELERS 001708)

Mr. Sicheri documented the following in the claim notes: Damages/Verification: Supplemental estimate payment note: Received email from policyholder with final loss of use payment request for October. Saved to file docs. Agree with third loss of use payment release. Payment Breakdown

COV A RCV: $24,594.65
Depreciation: $2067.57
Deductible: $1000
Prior Payment: $21,527.08
Net: $0

Coverage D Payment: $3646.90 July, August, September and October
Prior Payment: $2696.90
Net: $950

Water MIT Payment: $5288.87
Rebuild: $11,872.53
Asbestos Abatement: $1444.08
HVAC/Water Heater: $5989.25

(TRAVELERS 000215)

Tyler Horan documented the following in the claim notes: Management Review: Approved loss of rents for October for $950. (TRAVELERS 000215)

Travelers issued payment to Mr. Diem in the amount of **$950.00.** (TRAVELERS 000224)

Mr. Sicheri wrote to Mr. Diem and Bellator Claims: Thank you for the e-mail and loss of use payment request. Final loss of use payment for October was requested to be mailed to you. (BELLATOR 001460)

**November 24, 2020:** Bellator Claims wrote to Mr. Diem: I will call you later today or tomorrow at the latest to discuss the claim and how we can best move forward. (BELLATOR 001378)

Mr. Diem replied: Sounds good. Left you a voice message yesterday, too. Let me know if my offer would be helpful. (BELLATOR 001388)

**November 29, 2020:** Mr. Diem wrote to Bellator Claims: I went ahead and ordered a Matterport Scan. Here's the link for your reference. (BELLATOR 001498)

**December 4, 2020:** Quick Books Estimate No. 890
Description: Electrical Scope of Work
Total: $23,000.00
(No Company name identified)
(BELLATOR_000009)

**December 7, 2020:** Mr. Diem wrote to Bellator Claims: Please see attached electrical estimate. (BELLATOR 001400)

**December 8, 2020:** ESTIMATE: JEFFDIEM-3
OPERATOR: JDIEM
ESTIMATE: JEFF DIEM
SUMMARY FOR DWELLING
REPLACEMENT COST VALUE: $133,300.03
(BELLATOR 000883)

Bellator claims wrote to Mr. Diem: Good speaking with you this morning. I will await the information we discussed and then plan on speaking with you Friday morning. (BELLATOR 001379)

Mr. Diem wrote to Bellator Claims: Attached is the pdf and .ESX files for the claim. I've also reattached the electric and plumbing estimates. (BELLATOR 001474)

**December 14, 2020:** Bellator Claims Resolution, LLC

ESTIMATE: JEFFDIEM-3
Estimator: Taylor Grant
SUMMARY FOR DWELLING
REPLACEMENT COST VALUE: $168,521.49
(BELLATOR 000804)

Bellator Claims wrote to Mr. Diem: See attached logo options. Verbiage At End of Estimate …. Top of Estimate. (BELLATOR 001496)

Mr. Diem Replied: Margin vs. Markup worksheet …. (BELLATOR 001496)

**December 22, 2020:** Bellator Claims wrote to Mr. Diem: Our team will be meeting next Tuesday and sending out a Claims Update then. (BELLATOR 001380)

**December 29, 2020:** Bellator Claims wrote to Mr. Diem: I am trying to complete the Public Adjuster report before the holiday this week. Once I do I will get this submitted with the estimate to the insurance company. (BELLATOR 001381)

**January 5, 2021:** Bellator Claims Resolution, LLC
ESTIMATE: JEFF DIEM
ESTIMATOR: TAYLOR GRANT
SUMMARY FOR DWELLING
REPLACEMENT COST VALUE: $163,624.88
(BELLATOR 000747)

**January 12, 2021:** Bellator Claims wrote to Mr. Diem: I am back in town and I am reviewing the updated PA Report after the changes we discussed and should have this submitted to the insurance company this week. (BELLATOR 001371)

**January 15, 2021:** The public adjuster wrote to Travelers: Photographs, estimate repairs, bid items: To Whom It May Concern, This letter will serve as our comprehensive report of water loss damage found to the property. We conducted a thorough inspection in order to document damage to the property and to determine the extent of that damage. The remainder of this report will outline our findings. **DATE OF LOSS: July 6, 2020:** Origin of the covered loss was the downstairs bathroom. **ADJUSTMENT:** You have acknowledged the loss but to properly indemnify the client, permits must be pulled with Denver city which will then trigger required code upgrades to plumbing and electrical throughout the dwelling. Other items will be affected to provide access to the plumbing and electrical, including but not limited to, walls, ceilings, floors, cabinets. Please see attached bid items. Please advise as early as you can. (TRAVELERS 000710-715)

Mr. Sicheri documented the following in the claim notes: Damages /Verification: Supplemental estimate/Demand Received: Received email from policyholder PA Bellator claims with estimate, demand, bid items, pics, etc. Saved to file docs. PA estimate and demand amount is for $163,624.88. (TRAVELERS 000215) (Estimate: $163,000 – Travelers 1720-1753)

**January 20, 2021:** Bellator Claims wrote to Mr. Diem: Attached is the PA report we sent over to the carrier. (BELLATOR 001507)

**January 22, 2021:** Gabe Durate documented the following in the claim notes: Assignment: Claim reassignment received for handling: Water loss to insured owned dwelling. Initial inspection and estimate payment completed. Insured has PA, submitting estimate for approximately $160,000 which includes re-wiring and plumbing due to code upgrades (approximately $40,000 for both.). Potential for reinspect, will work with PA if needed Review of file shows partial for right, will review coverage, prior partial and update coverage as appropriate if needed. (TRAVELERS 000216)

**January 26, 2021:** Bellator Claims wrote to Mr. Diem: We sent our PA Report in to the carrier. They have assigned a new technical specialist to the case so we are giving him some time to review the report. Once he has reviewed it he could reach out to us but we will contact him later this week if we haven't heard from him. (BELLATOR 001372)

Mr. Diem replied: Hopefully this "specialist" has some construction knowledge. (BELLATOR 001382)

**February 3, 2021:** Bellator Claims wrote to Gabe Duarte: I left you a voicemail as well, would you please call me today? (BELLATOR 001464)

**February 9, 2021:** Bellator Claims wrote to Mr. Diem: I have been trying to reach the adjuster on this claim but have been able to. We are preparing the Demand Letter to submit to the insurance company and then we need to discuss options you have to push this claim forward. (BELLATOR 001373)

**February 10, 2021:** Bellator Claims wrote to Mr. Duarte: I left you a voicemail last week and sent an e-mail a week ago and still haven't heard anything back from you. Can you please advise where you are at with this claim? The insured is being negatively impacted due to this delay. (BELLATOR 001465)

Mr. Duarte replied: . . . I will be out of the office Tuesday, 09 Feb. – 12 Feb. with limited access to e-mails …. If this is an urgent matter which requires immediate assistance, please contact my colleague, Keegan Crowther …. (BELLATOR 001466)

**February 12, 2021:** Mr. Diem wrote to Bellator claims: 2 attachments: Code summary doc; Denver 2018 IRC screenshot: This should get you started. Please read my notes in read and don't copy/paste those into your document unless you're sure you want it in there as some of it is a note to you. Let me know if you have any questions. Happy to walk you through anything you like. (BELLATOR 001389)

**February 18, 2021:** The public adjuster wrote to Travelers: FINAL DEMAND:

The insured listed above, suffered a covered loss on July 6, 2020. Their claim had been severely underpaid and they subsequently hired Bellator Claims Resolution, LLC (Bellator Claims) to represent them. We performed our standard due diligence and sent Travelers Insurance Company the Public Adjuster Report which includes photos and the updated estimate of damages and requirements to make the insured whole. At this time the insured's claim remains severely underpaid and Bellator Claims has not been afforded a list of items disputed and their reasoning. This is unacceptable on every level and must be rectified immediately.

The insured submitted an estimate directly to the insurer after the loss and it took months for the insurer to respond to the questions regarding the estimate and avoided the insured for approximately two months. The insured then had to contact his insurance agent directly to have Justin Sicheri (adjuster) to reach out to the insured.

This is not what Bellator Claims would consider upholding the insurer's obligation of good faith and fair dealing.

Claim issues are as follows:

1. Initial actions and documents pertinent to the claim were not completed nor received in a timely manner from the insurer. A virtual walkthrough and onsite visit was conducted prior to our involvement. The insured was not satisfied with this and subsequently hired our firm. Bellator Claims Resolution, LLC submitted an updated estimate within the Public Adjuster Report to Travelers Insurance Company on January 20, 2021.

Kim from Bellator Claims called the current adjuster, Justin Sicheri (the 3rd adjuster on this claim), that same day to acknowledge receipt. Justin acknowledged he received the document and that it was attached to the claim file however the claim had been reassigned to Gabe Duarte. Justin told Kim that Gabe would review the document and reach out to us. Two days later we tried to contact Gabe, he did not answer his phone and his voicemail box was full. That was January 22, 2021 and since then multiple people from my office have tried to contact him, we have left multiple messages and sent multiple emails with absolutely no response.

2. Payment to the insured remains severely underpaid. On January 20, 2021, Bellator Claims Resolution, LLC submitted the Public Adjuster Report with Photos and Estimate of Damages totaling $163,624.88 and will need to add the unpaid Loss of Use which the insured has coverage for. Travelers Insurance Company has estimated this project with most recent RCV estimate at $24,594.65 (this was after the insured was finally able to get the adjuster on the phone). The initial claim was represented by Travelers to be approximately $11,300 which is absurd for this type of loss.

Colorado Department of Regulatory Agencies CRS 10-3-1104
Section 4. Unfair Claims Practices Defined Any of the following acts by an insurer, if committed in violation of Section 3, constitutes an unfair claims practice:

A. Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue;
B. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;
C. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies;
D. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
E. Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;
F. Refusing to pay claims without conducting a reasonable investigation;
G. Failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims;
H. Attempting to settle or settling claims for less than the amount that a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or
made part of an application;
I. Attempting to settle or settling claims on the basis of an application that was materially altered without notice to, or knowledge or consent of, the insured;
J. Making claims payments to an insured or beneficiary without indicating the coverage under which each payment is being made;
K. Unreasonably delaying the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information and verification appearing in the formal proof of loss form;
L. Failing in the case of claims denials or offers of compromise settlement to promptly provide a reasonable and accurate explanation of the basis for such actions;
M. Failing to provide forms necessary to present claims within fifteen (15) calendar days of a request with reasonable explanations regarding their use; NAIC Model Laws, Regulations, Guidelines and Other Resources—January 1997 © 1997 National Association of Insurance Commissioners 900-3
N. Failing to adopt and implement reasonable standards to assure that the repairs of a repairer owned by or required to be used by the insurer are performed in a workmanlike manner.

Denver Building Code Multiple Sections: Plumbing and Electrical:
P2502.2 Additions, alterations or repairs. Additions, alterations, renovations or repairs to any plumbing system shall conform to that required for a new plumbing system without requiring the existing plumbing system to comply with the requirements of this code. Additions, alterations or repairs shall not cause an existing system to become unsafe, insanitary or overloaded. Minor additions, alterations, renovations and repairs to existing plumbing systems shall be permitted in the same manner and arrangement as in the existing system, provided that such repairs or replacement are not hazardous and are approved

P2903.3.2 Maximum pressure. The static water pressure shall be not greater than 80 psi (551 kPa). Where the main pressure exceeds 80 psi (551 kPa), an approved pressure-reducing valve conforming to ASSE 1003 or CSA B356 shall be installed on the domestic water branch main or riser at the connection to the water service pipe.

P3002.1 Piping within buildings.
Drain, waste and vent (DWV) piping in buildings shall be as indicated in Tables P3002.1(1) and P3002.1(2) except that galvanized wrought-iron or galvanized steel pipe shall not be used underground and shall be maintained not less than 6 inches (152 mm) above ground. Allowance shall be made for the thermal expansion and contraction of plastic piping. (TRAVELERS 000780-783)

ELECTRICAL : E3401.4Additions and alterations.
Any addition or alteration to an existing electrical system shall be made in conformity to the provisions of Chapters 34 through 43. Where additions subject portions of existing systems to loads exceeding those permitted herein, such portions shall be made to comply with Chapters 34 through 43.

E3405.1Working space and clearances.
Access and working space shall be provided and maintained around all electrical equipment to permit ready and safe
operation and maintenance of such equipment in accordance with this section and Figure E3405.1. (110.26)

E3403.2Inspection required.
New electrical work and parts of existing systems affected by new work or alterations shall be inspected by the building
official to ensure compliance with the requirements of Chapters 34 through 43.

SOURCE:
https://www.denvergov.org/Government/Departments/Community-Planning-and-Development/Denver-Zoning-Code

Please review the insured's Public Adjuster Report with Photos and Estimate of Damages, which is being submitted along with this "Final Demand".

In summary, Travelers Insurance Company has been afforded multiple opportunities spanning over seven months to indemnify their premium-paying customer. There have been multiple estimates from Travelers with increasing amounts but we are still nowhere near what needs to be done to indemnify the insured. From DAY ONE, Bellator Claims Resolution, LLC conducted an extensive and thorough investigation of the insured's property and then presented Travelers Insurance Company with a legitimate and "Reasonable Demand" to indemnify the insured. It is nonsensical to continue delaying the indemnification of the insured.

We demand full indemnity of the insured's damages according to the policy and proper method of restoration within 72 hours. Thus far, the insured has fulfilled all their duties. Only a small portion of monies owed to the insured has been received to date. (TRAVELERS 000780-783)

**February 23, 2021:** Mr. Duarte documented the following in the claim notes: Correspondence: Demand received from PA. Responding email sent advising that while we are not in agreement with either demand or provided estimate, we are currently reviewing loss coverage to determine if any additional revisions are warranted to our most recent estimate. (TRAVELERS 000216)

Mr. Duarte wrote to the public adjuster: We have received your demand and while we are not in agreement with either the demand or provided estimate, we are reviewing the coverage and loss to determine if any revisions are warranted to our most recent estimate. We anticipate that review to be completed by the end of the week and will follow up at that time with the results of our review. With that, has the building department provided any documentation to support the code upgrades are required based on the covered repairs? If so, can you please forward that for review?

Bellator Claims wrote to Mr. Diem: I sent you an e-mail with a reply we FINALLY got from the adjuster. I think it's time to set up a phone call with Shaun the attorney to discuss how to move forward. (BELLATOR 001374)

Mr. Diem replied: Very good, thank you. Let me know when works for you to have a call with Shaun …. (BELLATOR 001384)

**February 24, 2021:** BACHUS SCHNKER – INSURANCE DISPUTE CONTINGENT FEE AGREEMENT. (BELLATOR_000001)

Bellator Claims wrote to Shaun Hodge: Diem: The attached and below are for the claim we're going to discuss this morning …. (BELLATOR 001448)

Mr. Diem wrote to Hodge: Please see attached. Go get'em! Please let me know what you need from me. However, I can help get this done, I'm happy to help with. I also copied Taylor so he know I submitted the agreement to you. (BELLATOR 001485)

**February 25, 2021:** Hodge Law wrote to Bellator Claims: Mr. Diem signed his Legal Services Agreement. Please see note below. (BELLATOR 001513)

**March 5, 2021:** Bellator Claims wrote to Hodge Law: I am following up to see if you've made contact with the insurance company to let them know you are involved. . . . We'd like a basic update to send to the client …. (BELLATOR 001520)

Shaun Hodge replied: Yes, we have sent a notice of representation to the insurance company and have had some initial discussions about the claim. We will move forward with filing suit if

we don't see substantive movement on the case from our initial discussions. (BELLATOR 001520)

**March 8, 2021:** Mike Cokins wrote to Mr. Diem: Please let this follow my voice message of a few moments ago. When we receive a signed contract back we send it to co-counsel along with all of the cost estimates from the public adjuster and also the insurance adjuster. We also send all photos of the public adjuster and the insurance company together with all e-mails …. The co-counsel will review everything at his earliest opportunity. Then a final demand letter is sent to the insurance company as required by law. If the case is not settled within 60 days after the insurance company received the final demand letter a lawsuit is prepared and filed . . . . Also, as per my voicemail, please do not copy the public adjuster when send us an e-mail . . . . (BELLATOR 001488)

**March 9, 2021:** Bellator wrote to Mr. Diem: Now that your case has been turned over to legal counsel I wanted to give you an outline of what you can expect. …. (BELLATOR 001369)

Bellator Claims wrote to Mr. Diem: The attorney has sent his letter of representation to the carrier and had some initial discussions with them. They are giving them time to act on those initial discussions and will file suit if not substantive movement occurs. …. (BELLATOR 001375)

**June 17, 2021:** Mr. Duarte documented the following: Complete final review of estimate for supplement. Review coverage is warranted based on review. AE review (if warranted) to confirm current. (TRAVELERS 000216)

**July 21, 2021:** Mr. Duarte documented the following in the claim notes: Review continues with regards to code items. Upon finalization follow up with public adjuster. Monitor supplements as needed. (TRAVELERS 000216)

**July 27, 2021:** Mr. Diem wrote to Shaun Hodge: . . . As we discussed it has been 4 months since I engaged Bacchus and Schanker and at this point all I'm getting are excuses as to why the suit has not been filed …. (BELLATOR 001470)

**July 29, 2021:** Mr. Head documented the following in the claim notes: MEDIA SHEET: 2 Videos 70 Photos. (TRAVELERS 000310-3346)

**August 11, 2021:** Mr. Diem filed suit against Travelers Personal Insurance Company

**September 21, 2021:** Bellator Claims wrote to Andrew Quisenberry: I have given Andrew access to our claims portal, Claims Force so you should now be able to log in and see all the documents and communications. … (BELLATOR 001446)

**October 1, 2021:** Travelers Answer to Complaint, Separate and Affirmative Defenses

**December 9, 2021:** Andrew Quisenberry wrote to Bellator Claims: . . . Several of the complaints are with the clients for their review and I'm working on two more that should be completed soon. …. (BELLATOR 001440)

**December 14, 2021:** Plaintiff's Supplemental Damages Disclosure:

- The amount for the necessary repairs to the property is $163,624.88
- Travelers has made payment in the amount of $21,527.02
- Unpaid Insurance Benefits: $142,097.86
- Plaintiff seeks unpaid rent of the upper unit for 13 months in the amount of $24,635.00
- Plaintiff seeks 13 months in unpaid rent for the lower unit, totaling $12,350.00
- Plaintiff is owed $179,082.86 in unpaid benefits.

**January 20, 2022:** Defendant's First Set of Written Discovery Requests to Plaintiff

**February 24, 2022:** Plaintiff's Responses

- The plumber, John Napolitan, had already repaired the pipe on or about July 7, 2020.
- Plumbing performed by Metropolitan Drain Cleaning – John Napolitan – Total amount $16,043.75
- K&D Development performed make-ready tasks and other repairs to drywall upstairs - $3,909 for items related to the claim
- Framer – Ivan Perez
- Each repair was paid for myself either from my own bank accounts or from my HELOC.
- Some of the earlier items to DFF, Enviro Excellence and High Water P&H were paid with insurance proceeds.
- Perez Carpentry – note this goes above the scope of just the loss. As I'd explained before I was going to do some upgrades at the same time.

**March 18, 2022:** Bellator Claims wrote to Andrew Quisenberry: I am hoping to get updates on the files …. (BELLATOR 001422)

**March 30, 2022:** Bellator Claims wrote to Andrew Quisenberry: Just wanted to check in to see if there is a good time to call to get updates on the below files: Diem. (BELLATOR 001421)

**May 13, 2022:** Bellator Claims wrote to Andrew Quisenberry: Just checking to see if I can get updates on the claims. If I can just get them before Tuesday, May 17 so I have them for my next meeting I would appreciate it. Diem: Do you still need a meeting with Taylor on this one? (BELLATOR 001412)

**May 16, 2022:** Mr. Quisenberry wrote to Bellator Claims: Here's the update: Diem: I will probably reach out to Taylor later this week or start of next week to discuss. (BELLATOR 001410)

**June 2, 2022:** Travelers' Responses to Plaintiff's First Set of Written Discovery

- Plaintiff failed to provide Travelers with documentation from City/County inspections regarding code upgrades which was requested on September 2, 2020, September 14, 2020, October 26, 2020 and February 21, 2021.
- Travelers issued correspondence on September 9, 2020 partially denying the claim for insurance benefits ….
- On September 22, 2020, Travelers again advised that items including the electrical, plumbing and structural framework were addressed in the partial loss not covered letter and further advised that loss of rental income for the upstairs unit was not covered because it was not affected directly by the water loss.
- On October 26, 2020, Travelers advised plaintiff of the applicability of the Property – Additional Coverages provision, Section 9 – Ordinance or Law ….

**June 10, 2022:** Bellator Claims wrote to Andrew Quisenberry: Just checking to see if there are any new updates? Diem: Taylor hasn't heard from you about scheduling to discuss this. Do you still need to discuss it with Taylor? (BELLATOR 001407)

Mr. Quisenberry wrote to Bellator Claims: RE: Update on cases with Bachus & Schanker: (Five Listed Cases): Diem: Client and I are discussing experts and will report back before expert disclosures. (BELLATOR 001407)

**July 14, 2022:** Bellator Claims Resolution – Claim Closing Checklist. (BELLATOR 000090)

- CLAIM PAYMENTS IN FROM TRAVELERS: $23,273.92 (BELLATOR 000092)
- EXPENSES PAID OUT: $16,158.66
- OVERAGE: $7,115.26 (BELLATOR 000093)

**July 12, 2022:** Bellator Claims wrote to Andrew Quisenberry: Just following up to see when you would like to schedule a call. (BELLATOR 001402)

The above opinions are being rendered to a reasonable degree of professional certainty based upon my 50+ years of experience in connection with the processing of insurance claims, both as an employee of State Farm Fire & Casualty Company and as an independent claim consultant.

Prepared and Submitted By:

Paul Hamilton

Paul Hamilton
Property & Casualty Claim Consultant

Attachments:
(1) Resume
(2) Deposition Listing
(3) Trial Listing