16CA1478 My Roofer v State Farm 09-14-2017

COLORADO COURT OF APPEALS

DATE FILED: August 6, 2018 / September 14, 2017
FILING ID / CASE NUMBER: 2016CA1478
CASE NUMBER: 2017CV34384

---

Court of Appeals No. 16CA1478
Weld County District Court No. 15CV30425
Honorable Todd L. Taylor, Judge

---

My Roofer, Inc.,

Plaintiff-Appellant,

v.

State Farm Fire and Casualty Company,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE NAVARRO
Román and Nieto*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 14, 2017

---

Furtado Law P.C., David J. Furtado, Rodney J. Monheit, Denver, Colorado, for Plaintiff-Appellant

Patterson & Salg, P.C., Franklin D. Patterson, Hillary D. Patterson, Greenwood Village, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

Exhibit I

EXHIBIT
M

¶ 1 Plaintiff, My Roofer, Inc., appeals the judgment in favor of defendant, State Farm Fire and Casualty Company. We affirm.

## I. Factual and Procedural History

¶ 2 A hail and wind storm damaged the shingles on the home of Shannan and Michael Smith, State Farm insurance policyholders. A State Farm insurance adjustor provided an estimate for the shingles' replacement as a covered loss. The adjustor also noted wear and tear to the roof decking.[1] But he informed the Smiths that their policy did not cover the cost to replace the decking because the damage was caused by an uncovered, nonfortuitous event: long-term wear, tear, and deterioration unrelated to the storm.

¶ 3 My Roofer, a contractor retained by the Smiths, confirmed that the decking had suffered significant wear and tear before the storm. My Roofer believed, however, that the Smiths' insurance policy's coverage for repair costs caused by the enforcement of an ordinance or law (the Option OL provision) required State Farm to pay for the decking's replacement. According to My Roofer, a local building

---

[1] "Decking" (also known as sheathing) refers to the layer of plywood, or similar material, used as a base upon which shingles or other roof coverings are attached.

ordinance required replacement of the decking because the decking was too damaged by wear and tear to hold new shingles.

¶ 4 My Roofer replaced both the shingles and the decking. My Roofer also accepted assignment of the Smiths' rights under the insurance policy to pursue payment from State Farm. State Farm paid for replacing the shingles but did not pay for replacing the decking. My Roofer then sued State Farm and sought relief for breach of the insurance policy and treble damages for unreasonable delay or denial of coverage under sections 10-3-1115 and 10-3-1116, C.R.S. 2017.

¶ 5 The matter went before a jury for trial. State Farm moved for a directed verdict after My Roofer's case-in-chief. The trial court granted the motion, concluding that the Option OL provision did not apply because enforcement of the building code did not cause the cost to replace the decking. Instead, "it was the preexisting damage as a result of wear, tear, and deterioration to the decking that was the cause."

## II. The Option OL Provision

¶ 6 My Roofer contends that the trial court erred by concluding that the Option OL provision did not require State Farm to pay for

replacing the roof decking. Specifically, My Roofer challenges the court's finding that wear, tear, and deterioration — rather than enforcement of the ordinance — caused the need to replace the decking and the cost of doing so. Although My Roofer's challenge has some force, we are ultimately not persuaded.

### A. Standard of Review

¶ 7 We review de novo a trial court's ruling on a motion for directed verdict. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 982 (Colo. App. 2011). "In evaluating a trial court's ruling on a motion for directed verdict, we must determine whether there is evidence of sufficient probative force to support the trial court's ruling." *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 186 P.3d 80, 83 (Colo. App. 2008) (citation omitted). "In so doing, we must consider all of the facts in the light most favorable to the [nonmoving] party and must determine whether a reasonable jury could have found in favor of the [nonmoving] party." *Id.* (citation omitted).

### B. Analysis

#### 1. The Option OL provision — Section 2

¶ 8 On appeal, My Roofer relies initially on Section 2 of the Option OL provision, which provides:

> When the dwelling . . . is damaged by a Loss Insured we will pay for *the increased cost to repair or rebuild* the physically damaged portion of the dwelling *caused by the enforcement of a building, zoning or land use ordinance* if the enforcement is directly caused by the same loss and the enforcement is in effect at the time the Loss Insured occurs.

(Emphasis added.)

¶ 9 In the trial court, State Farm gave the following example of how this provision could apply. If a policyholder suffers a covered loss to shake-style shingles, but a local ordinance forbids installing new shake shingles, Section 2 of the Option OL provision would cover the increased cost to replace the damaged shingles with a more costly material because this additional cost is caused by enforcement of the ordinance.

¶ 10 Here, all evidence admitted in My Roofer's case-in-chief showed that the decking suffered from significant wear, tear, and deterioration that existed before, and independent from, the 2014 hail and wind storm. My Roofer does not dispute that this damage was so significant that the decking could not support new shingles and, therefore, replacing the decking was necessary before replacing the shingles. Recognizing this undisputed evidence, the trial court

explained that, "even if there had been no building code that applied here, [My Roofer] still would've had to replace the roof decking." As a result, the court could not conclude that, "but for the enforcement of a building, zoning, or land use ordinance," the decking would not have had to be replaced.

¶ 11 We discern no error in the trial court's reasoning. The pre-existing damage to the decking, rather than enforcement of the building code, caused the need to replace the decking. *See* Black's Law Dictionary 265 (10th ed. 2014) (defining "cause" as "[s]omething that produces an effect or result."); *see also Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (to establish causation, "it is necessary to show that the [event] was a 'substantial factor' in producing the harm"). While the code may have elevated the practical need to replace the decking to a legal obligation, the code did not cause this need. The code merely recognized this need.

¶ 12 We also reject My Roofer's argument that enforcement of the building code (or the 2014 storm itself) was the "efficient cause" of the decking's replacement. When a loss is concurrently caused by both a covered and excluded peril, the one that sets the other in

motion is deemed the "efficient cause," or the cause to which the loss is to be attributed. *See Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008).

¶ 13 As noted, My Roofer does not dispute that the decking suffered from significant damage before the storm. But My Roofer claims that a reasonable juror could construe the building code or the storm as the efficient cause of the decking's loss because either set in motion the cost to replace the decking — new shingles could not be installed without new decking. The argument fails, however, because neither enforcement of the code nor the storm caused the damage to the decking. And that damage was the sole cause of the decking's replacement, which alone caused the increased cost to replace the shingles.[2]

2. The Option OL provision — Section 3

¶ 14 My Roofer also invokes Section 3 of the Option OL provision. Section 3 says that, under some circumstances, State Farm will pay for loss to the "undamaged portion" of the dwelling caused by the

---

[2] Because enforcement of the building code did not cause the increased cost to replace the shingles, we need not address whether the covered loss (the damage from the 2014 storm) directly caused the enforcement of the code.

enforcement of a building, zoning, or land use ordinance if the enforcement is directly caused by the same covered loss. My Roofer contends that the decking was an "undamaged" portion of the dwelling and, thus, the cost to replace the decking fell within the scope of Section 3. We disagree, for two independent reasons.

¶ 15 First, as explained, enforcement of the building code did not cause the need to replace the decking or the cost of doing so. Instead, pre-existing damage (a noncovered peril) required replacement of the decking.

¶ 16 Second, the decking did not qualify as an "undamaged portion of the dwelling" because the decking was significantly damaged before the storm. "Undamaged" cannot mean only undamaged by the covered loss, as My Roofer argues, because the policy defines "property damage" as "physical damage to or destruction of tangible property, including loss of use of this property." Under this broad definition, the decking was damaged.

¶ 17 Contrary to My Roofer's view, this view of Section 3 does not result in "illusory coverage." In fact, the trial court gave an example that could trigger coverage under Section 3. If a policyholder suffers a covered loss to shingles, and a new building code requires

a thicker layer of decking before installing new shingles, Section 3 would seem to cover the cost of replacing the decking even where it was completely undamaged.[3]

¶ 18 In sum, even viewing the evidence in the light most favorable to My Roofer, a reasonable jury could not have found that the Option OL provision covered the cost to replace the decking.

### III. The Roof as a Single System

¶ 19 My Roofer challenges the trial court's judgment on a ground that does not rely on the policy's Option OL provision. As we understand it, My Roofer's challenge proceeds as follows.

¶ 20 One cannot consider the decking separately from the shingles because a roof is a single, interconnected system comprised of essential components. When one component requires replacement due to a covered loss, other components may also require replacement in order to restore the roof to its pre-loss condition. The policy must cover such an additional replacement cost. This is

---

[3] My Roofer did not argue below that the decking qualified as undamaged because the decking was not damaged by the covered loss (the 2014 storm). Thus, the trial court did not offer the above example in the context of addressing Section 3 of the Option OL provision. Still, the example illustrates why Section 3 is not illusory under the court's, and our, interpretation of the provision.

so, the argument goes, because part (1)(a) of the policy's loss settlement section defines the replacement cost as "the cost to repair or replace with similar construction and for the same use . . . the damaged part of the property covered [under the policy]." And part (1)(a)(2) further identifies the replacement cost as the "additional amount [the policyholder] actually and necessarily spend[s] to repair and replace the damaged part of the property." Under this roof-as-a-single-system theory and this policy language, an ordinary, objectively reasonable policyholder would expect to be indemnified for the replacement costs of both the shingles and the decking in this case.

¶ 21 State Farm answers that My Roofer failed to present this particular legal theory to the trial court and, thus, we should not address it on appeal. State Farm is right.

### A. Preservation

¶ 22 Parties need not use "talismanic language" to preserve a particular argument for appeal, but they must present the trial court with an adequate opportunity to make findings of fact and conclusions of law on the argument. *See People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004). "A trial court cannot be expected to

intuit the challenge brought by the parties." *People v. Rector*, 248 P.3d 1196, 1201 (Colo. 2011).

¶ 23 Here, the record does not show that My Roofer adequately raised the roof-as-a-single-system theory or the related policy sections in the trial court. Instead, My Roofer's case at trial rested on the Option OL provision.

¶ 24 In the trial management order, its statement of the case, its proposed jury instructions, its proposed jury verdict questions, its opening statement, and its examination of witnesses, My Roofer stressed that the Option OL provision was the linchpin of its case.[4] Indeed, the Option OL provision was referenced in My Roofer's proposed jury instructions and verdict forms, but part (1)(a) of the

---

[4] For instance, My Roofer explained in its opening statement:

> What we have is we have a policy that once you read it, talks about an OL code upgrade. We have a basic policy with State Farm and we're actually going to be going through the policy, but *virtually, all of our argument is going to come in Exhibit 1, page 48 of 49,* [the Option OL provision].

(Emphasis added.)

policy's loss settlement section — a basis of My Roofer's roof-as-a-single-system theory — was not.

¶ 25 Likewise, when responding to State Farm's motion for directed verdict, My Roofer "really emphasize[d]" Section 3 of the Option OL provision "as the language which [My Roofer] believe[s] it's reasonable to submit to the jury that [State Farm] has not lived up to." When the trial court asked for any additional grounds to deny the directed verdict, My Roofer briefly mentioned a "collapse" provision of the policy (which is not at issue on appeal), but My Roofer did not mention the theory of a roof as an "interconnected system" or part (1)(a) of the policy's loss settlement section.

¶ 26 Yet, My Roofer maintains that it preserved the argument through the expert report and trial testimony of its witness Kyle Larson. We do not agree. First, the report was merely an attachment in response to State Farm's motion for summary judgment challenging My Roofer's *standing* to assert its claims. The motion did not address State Farm's responsibility under the policy. In denying the motion, the trial court had no need to, and did not, address the theory of the roof as an interconnected system. Perhaps more importantly, the report was not admitted at trial, and

My Roofer made no mention of it when opposing the directed verdict. *See Francis v. Aspen Mountain Condo. Ass'n, Inc.*, 2017 COA 19, ¶ 35 (refusing to consider arguments raised in a motion for summary judgment that were not renewed at trial).

¶ 27 Second, the cited trial testimony was a passing (and somewhat vague) comment made during *State Farm's cross examination* of Larson. Because My Roofer neither presented a legal theory based on this testimony nor referred to it when opposing the directed verdict, the testimony did not preserve the argument raised on appeal. *See Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 26 ("To preserve an argument as to *why* a particular decision is appropriate, a party must timely raise that specific argument."); *see also In re Estate of Ramstetter*, 2016 COA 81, ¶¶ 67-69 (conducting a similar preservation analysis).

¶ 28 Because My Roofer did not present the trial court with an adequate opportunity to make findings of facts or conclusions of law on the argument that the roof must be considered a single interconnected system, we turn to My Roofer's alternative request that we review this unpreserved theory nonetheless.

B. Consideration of the Unpreserved Argument

¶ 29 Under certain circumstances, an appellate court may exercise "discretion to notice any error appearing of record, whether or not a party preserved its right to raise or discuss the error on appeal." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008 (Colo. 2008); *see also Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 549-50 (Colo. 2006). But our review of unpreserved arguments in civil cases is "exceptionally limited." *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1269 (Colo. App. 2010). "[O]nly in a 'rare' civil case, involving 'unusual or special' circumstances — and even then, only 'when necessary to avert unequivocal and manifest injustice' — will an appellate court reverse based on an unpreserved claim of error." *Id.* (quoting *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo. App. 2009)).

¶ 30 In *Roberts*, for instance, the trial court misinterpreted a key provision of an insurance agreement, resulting in summary judgment based on an erroneous construction of the contract. 144 P.3d at 549. Though the plaintiff had failed to argue the correct interpretation to the trial court, the supreme court found that consideration of the unpreserved error was warranted by

extraordinary circumstances. Specifically, the error hinged on a question of law, the provision at issue had been brought to the trial court's attention as dispositive, the plaintiff had never taken a position contrary to that being asserted on appeal, and the erroneous construction was obvious and manifestly unjust. *Id.* at 549-51.

¶ 31 The supreme court repeated this reasoning in *Robinson*, in which the trial court assessed attorney fees based on an erroneous interpretation of section 13-17-201, C.R.S. 2007. 179 P.3d at 1008. Though the correct statutory interpretation was not preserved, the supreme court found review justified because: the matter hinged on a question of law, the correct provision (the statute) was before the lower court, the plaintiff's appellate argument was not inconsistent with those raised at trial, and the error was once again obvious and manifestly unjust (in part because the decision under review conflicted with another court of appeals decision). *See id.* at 1008-09.

¶ 32 The circumstances here are quite different. Though the unpreserved argument raises a question of law (interpretation of the insurance policy), it relies on a specific policy provision — part (1)(a)

of the loss settlement section — that was not brought to the trial court's attention as significant.

¶ 33 Moreover, My Roofer's theory of a roof as a single, interconnected system is actually in tension with the theory it presented at trial. There, My Roofer relied on Section 3 of the Option OL provision. Hence, My Roofer argued that the decking was "undamaged portion of the dwelling" whose replacement constituted an additional cost caused by enforcement of the building code. My Roofer's new argument, however, classifies the entire roof system (including the decking) as a single unit of the dwelling, whose damage was directly caused by the hail and wind storm. Under this view, the decking was a *damaged* portion of the dwelling and thus would not trigger Section 3 of the Option OL provision.

¶ 34 In light of the above, and because My Roofer's new legal theory is not unequivocally correct, we do not perceive manifest injustice in the trial court's ruling. So, we will not consider the new theory.

## IV. Attorney Fees

¶ 35 My Roofer asks us to award the attorney fees and costs it incurred on appeal under section 10-3-1116. Based on our disposition of this appeal, we deny this request.

## V. Conclusion

¶ 36 The judgment is affirmed.

JUDGE ROMÁN and JUDGE NIETO concur.

**Court of Appeals**

**STATE OF COLORADO**
**2 East 14th Avenue**
**Denver, CO 80203**
**(720) 625-5150**

**CHRIS RYAN**
**CLERK OF THE COURT**

**PAULINE BROCK**
**CHIEF DEPUTY CLERK**

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment. In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment. Pursuant to C.A.R. 3.4(m), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition. Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b), will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT: Alan M. Loeb
Chief Judge

DATED: September 14, 2017

***Notice to self-represented parties***: *The Colorado Bar Association provides free volunteer attorneys in a small number of appellate cases. If you are representing yourself and meet the CBA low income qualifications, you may apply to the CBA to see if your case may be chosen for a free lawyer. Self-represented parties who are interested should visit the Appellate Pro Bono Program page at* *http://www.cba.cobar.org/repository/Access%20to%20Justice/AppelateProBono/CBAAppProBonoProg_PublicInfoApp.pdf*